John L. CORRIGAN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 04–1587 C.

United States Court of Federal Claims.

Nov. 15, 2005.

John L. Corrigan, Auburn, WA, pro se.

Dawn S. Conrad, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant. Kathy M. Sachen–Gute, National Credit Union Administration, of counsel.

### OPINION AND ORDER

HEWITT, Judge.

Before the court is Defendant's Motion to Dismiss and Motion for Summary Judgment (Def.'s Mot.) and the following responsive briefing: Plaintiff's Response to Dismiss and Motion for Summary Judgment (Pl.'s Resp.) and Defendant's Reply in Support of Its Motion to Dismiss and Motion for Summary Judgment (Def.'s Reply). Defendant moves to dismiss for want of jurisdiction plaintiff's Fair Labor Standards Act (FLSA or Act) overtime claims that accrued more than three years before the filing of plaintiff's complaint on the ground that those overtime claims are time-barred. See Def.'s Mot. at 1 (citing Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC)). Defendant moves to dismiss for failure to state a claim on which relief can be granted plaintiff's Federal Employee Pay Act (FEPA) overtime claims on the ground that plaintiff cannot demonstrate that the claimed overtime was ordered or approved in writing. Def.'s Mot. at 1 (citing RCFC 12(b)(6) and Doe v. United States, 372 F.3d 1347 (Fed.Cir.2004)). Defendant moves for summary judgment on plaintiff's remaining FLSA overtime claims on the ground that plaintiff's position as a CU–11 credit union examiner is classified as FLSA exempt. Def.'s Mot. at 1 (citing RCFC 56(b)). Defendant also moves for summary judgment on plaintiff's travel expense claims on the ground that the government properly denied the claims under the Federal Travel Regulations and the National Credit Union Administration's Travel Manual. Def.'s Mot. at 1. For the following reasons, defendant's motion to dismiss is GRANTED with respect to plaintiff's FLSA overtime claims that accrued three years before the filing of the complaint. Defendant's motion for summary judgment is GRANTED with respect to plaintiff's remaining FLSA overtime claims, with respect to plaintiff's FEPA overtime claims, and with respect to plaintiff's travel expense claims.

### I. Background

Plaintiff is a credit union examiner for the National Credit Union Administration (NCUA). Defendant's Proposed Findings of Uncontroverted Fact (DPFUF) ¶ 1.[1] NCUA is an independent agency in the executive branch of the federal government. 12 U.S.C. § 1752a(a) (2000). The agency is responsible for regulating, examining and insuring federally chartered credit unions, federally insured state-chartered credit unions and federally insured corporate credit unions. See 12 U.S.C. §§ 1751–1795 (describing NCUA's responsibilities). NCUA examiners assist the employees of federal credit unions in

---

1. Facts cited to the filings of only one party do not appear to be in dispute.

performing their duties primarily through on-site examinations of the credit unions. *See* 12 U.S.C. §§ 1756, 1784. Credit union examiners work from their homes and travel to the credit unions to conduct examinations. Def.'s Mot. at 3 (citing Appendix to Defendant's Motion to Dismiss and Motion for Summary Judgment (App.) at 20–26 (position description for a credit union examiner)).

On November 14, 1999, Mr. Corrigan began working for NCUA in the position of a CU–9 examiner.[2] App. at 32 (Corrigan's Conditional Appointment Notification of Personnel Action Form). NCUA classified his position of CU–9 examiner as non-exempt from the provisions of the FLSA. DPFUF at ¶ 3; 29 U.S.C. § 213(a)(1). His initial duty station was Los Angeles, California. DPFUF at ¶¶ 1–2.

"On January 14, 2001, NCUA promoted Mr. Corrigan to a CU–11 credit union examiner position and assigned him a district of credit unions."[3] DPFUF ¶ 6 (citing App. at 35 (Corrigan's Promotion Notification of Personnel Action Form)). NCUA classified his position of CU–11 examiner as exempt from the provisions of the FLSA based on the professional exemption. *See* App. at 35 (Corrigan's Promotion Notification of Personnel Action Form), 39 (Corrigan's Reassignment Notification of Personnel Action Form), 79–81 (FLSA Report for Corrigan's FLSA Claim).

At Mr. Corrigan's request, he was reassigned to a duty station in Seattle, Washington to work with a different group of NCUA examiners. DPFUF ¶¶ 9–10. His reassignment became effective on April 8, 2001. *Id.* ¶ 10 (citing App. at 39 (Corrigan's Reassignment Notification of Personnel Action Form)). Mr. Corrigan continues to work in the position of a CU–11 examiner. *Id.* ¶ 6.

---

2. Positions at NCUA are designated by the prefix CU. DPFUF at 1 n. 1.

3. Headquartered in Alexandria, Virginia, NCUA operates through five regional offices. App. at 1–2 (NCUA Organizational Chart and Central Office Directory).

4. The cited Public Law amended various sections of the United States Code pertaining to the "auditing, reporting, and other functions" of the General Accounting Office. *See* 110 Stat. 3826.

Mr. Corrigan filed suit on October 20, 2004 seeking overtime pay under the FLSA, 5 U.S.C. §§ 201–216 (2000), and under the FEPA, 5 U.S.C. §§ 5542, 5544, 5546 (2000). *See* Complaint (Compl.) ¶ 1; Amended Complaint (Am.Compl.) ¶ 2. He also seeks reimbursement for denied travel expenses under NCUA's Travel Manual, certain provisions of the Federal Travel Regulations (FTR), 41 C.F.R. pts. 300–304 (2004), the General Accounting Office Act of 1996, Pub.L. No. 104–316, 110 Stat. 3826 (Oct. 19, 1996),[4] and the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (2000). Am. Compl. ¶ 3.

Mr. Corrigan alleges that he performed: (1) "[s]uffered and permitted work in the form of training travel on Sundays for non-working days during regularly scheduled working hours," *id.* ¶ 7, (2) "[s]uffered and permitted work in the form of training travel on both non-working days and working days during regularly scheduled and non-scheduled working hours," *id.* at ¶ 8, (3) "[s]uffered and permitted work in the form of claimed 'commuting' time for overnight travel away from duty station," *id.* at ¶ 9, and (4) "[s]uffered and permitted work in the form of claimed 'commuting' time for travel to and from the work site within the official duty station," *id.* at ¶ 10. He seeks overtime pay for the periods extending from December 1, 1999 to present and from December 1, 2000 to present. *Id.* at ¶ 6.

Defendant has moved to dismiss and for summary judgment.

## II. Discussion

### A. Standards of Review

RCFC 12(b)(1) governs the dismissal of a claim for lack of subject matter jurisdiction.

---

From plaintiff's complaint, *see* Compl. ¶ 3, it appears that the section on which plaintiff relies is 31 U.S.C. § 3702, which provides in pertinent part:

The Administrator of General Services shall settle claims involving expenses incurred by Federal civilian employees for official travel and transportation, and for relocation expenses incident to transfers of official duty station.

31 U.S.C. § 3702(a)(3) (2000).

Whether jurisdiction exists is a "threshold" issue for consideration. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The court must accept as true the facts alleged in the complaint and must draw all reasonable inferences in plaintiff's favor. *See Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). Plaintiff bears the burden of proving, by a preponderance of the evidence, that the court has jurisdiction to hear an alleged claim. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) ("If [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."); *Toxgon Corp. v. BNFL, Inc.,* 312 F.3d 1379, 1383 (Fed.Cir. 2002); *Reynolds,* 846 F.2d at 748 ("[O]nce the [trial] court's subject matter jurisdiction was put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

RCFC 12(b)(6) governs the dismissal of a claim for failure to state a claim upon which relief can be granted. The court may dismiss a complaint for failure to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

RCFC 56(c) provides for the entry of summary judgment "if there is no genuine issue as to any material fact" and the movant is entitled to judgment as a matter of law. RCFC 56(c); *Am. Pelagic Fishing Co. v. United States,* 379 F.3d 1363, 1370–71 (Fed. Cir.2004) ("Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only genuine disputes over material facts that might affect the outcome of the suit will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he substantive law will identify which facts are material. . . . Factual disputes that are irrelevant or unnecessary will not be counted . . . ."). Evidence that is "merely colorable, or is not significantly probative" will not defeat a summary judgment motion. *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

### B. Plaintiff's Overtime Claims under the FLSA

■ Defendant argues that plaintiff's FLSA overtime claims that accrued prior to October 20, 2001, three years before plaintiff filed suit, are barred by the statute of limitations. Def.'s Mot. at 8–9; Def.'s Reply at 2. Pointing to the three-year limitations period for willful violations of the FLSA, defendant asserts that "[e]ven assuming for purposes of this motion that defendant willfully violated FLSA, the longest statute of limitations applicable to Mr. Corrigan's FLSA claims would be three years." Def.'s Mot. at 9 (citing 29 U.S.C. § 255(a)).

Plaintiff asserts that his overtime "[c]laims prior to October 20, 2001 are not time-barred" because he submitted a first stage grievance to NCUA on January 20, 2002. Pl.'s Resp. at 1. Relying on the CDA requirement that " '[a]ll claims by a contractor against the government shall be in writing and shall be submitted to the contracting officer for a decision,' " plaintiff argues that the submission of his first stage grievance to NCUA constitutes the filing of a claim and therefore, the filing of his "complaint." Pl.'s Resp. at 1 (quoting 41 U.S.C. § 605(a)).

The FLSA requires that an action be commenced within two years after the cause of action has accrued and, if the violation of the Act is willful, that an action be commenced within three years after the cause of action has accrued.[5] 29 U.S.C. § 255(a). "[A]

---

**5.** To establish a willful violation of the FLSA, a plaintiff must show that the employer either knew or showed reckless disregard for whether

its conduct was prohibited by the Act. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid." *Cook v. United States,* 855 F.2d 848, 851 (Fed.Cir.1988) (citing *Beebe v. United States,* 226 Ct.Cl. 308, 640 F.2d 1283, 1293 (1981) (stating that a cause of action accrues on the pay day for the work at issue)).

Here, plaintiff seeks overtime pay for the time periods of "December 1, 1999 to present" and "December 1, 2000 to present." Am. Compl. at ¶ 6. He filed suit on October 29, 2004. Compl. at 1. Contrary to Mr. Corrigan's assertions, the filing of his NCUA grievance, an administrative claim, "does not toll the statute of limitations imposed by section 255(a)." *Hickman v. United States,* 10 Cl.Ct. 550, 552 (1986) (citations omitted).

Nor is plaintiff's case governed by the CDA. Mr. Corrigan was appointed to his position with NCUA,[6] *see* App. at 32 (Corrigan's Conditional Appointment Notification of Personnel Action Form), and it is well-established that "federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir.1985) (citations omitted).

Mr. Corrigan worked in the position of a FLSA non-exempt CU–9 examiner from November 14, 1999, the date of his employment with NCUA, until January 14, 2001, the date of his promotion to the position of CU–11 examiner. *See* App. at 32 (Corrigan's Conditional Appointment Notification of Personnel Action Form); *id.* at 35 (Corrigan's Promotion Notification of Personnel Action Form). Since his promotion on January 14, 2001, Mr. Corrigan has worked in the position of a FLSA-exempt CU–11 examiner. *See* App. at 35 (Corrigan's Promotion Notification of Personnel Action Form); DPFUF ¶ 6. Assuming, as defendant concedes for purposes of this motion, that plaintiff can show that NCUA willfully violated FLSA, plaintiff's FLSA claims that accrued three years or more before the filing of plaintiff's suit on October 20, 2001 are time-barred.

Accordingly, defendant's motion to dismiss plaintiff's FLSA claims that accrued prior to October 20, 2001 is GRANTED.

Defendant moves for summary judgment with respect to plaintiff's remaining FLSA claims. Def.'s Mot. at 13–17; Def.'s Reply at 7–8. Defendant argues that plaintiff was not entitled to FLSA overtime pay as a matter of law during the period of time he worked in the FLSA-exempt position of CU–11 credit union examiner. Def.'s Mot. at 13–17. Defendant contends that plaintiff is exempt from the provisions of FLSA under the professional exemption. Def.'s Reply at 7.

Although Mr. Corrigan has not challenged the classification of his position as FLSA-exempt, *see generally* Compl.; Pl.'s Resp., he nonetheless argues that his remaining FLSA claims do not fail as a matter of law because he is "only exempt from certain provisions of the FLSA—not all of them." Pl.'s Resp. at 2. Plaintiff acknowledges the Federal Circuit's decision in *Doe,* 372 F.3d 1347, but asserts that *Doe* is distinguishable because it addressed claims by attorneys who "are exempt from *all* provisions of the FLSA." *See* Pl.'s Resp. at 2. However, Mr. Corrigan has identified no authorities which support his view that he is "only exempt from certain provisions of the FLSA" and the court is not aware of any legal support for Mr. Corrigan's view.

Under the FLSA, an employee who works more than forty hours per week shall receive overtime pay "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). If "an[ ] employee [is] employed in a bona fide executive, administrative, or professional capacity," however, the overtime provisions of the FLSA do not apply. 29 U.S.C. § 213(a)(1). Under the implementing regulations of the Office of Personnel Management (OPM), an employee is presumed to be non-exempt and thus, eligible for overtime pay under the FLSA. 5 C.F.R. § 551.202(a). An employee is ineligible for overtime pay under the FLSA if the employing agency correctly determines that the employee "clearly meets

---

6. Mr. Corrigan's appointment as a credit union examiner with NCUA was conditioned upon a one-year probationary period. App. at 32 (Corri-

gan's Conditional Appointment Notification of Personnel Action Form).

the criteria for exemption." 5 C.F.R. § 551.202(d). The exemption criteria are to be "narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption." 5 C.F.R. § 551.202(b). Whether an employee is exempt or non-exempt under the FLSA is determined by "the duties actually performed by the employee." 5 C.F.R. § 551.202(i). The employing agency asserting the exemption bears the burden of proof. 5 C.F.R. § 551.202(c).

■ To meet the criteria for the professional exemption, an employee must satisfy each of the three tests set forth in the OPM regulation, specifically, the primary duty test, the intellectual and varied work test, and the discretion and independent judgment test. 5 C.F.R. § 551.207. The primary duty test is met if the employee performs work that:

> requires knowledge in a field of . . . learning customarily and characteristically acquired through education . . . that meets the requirements for a bachelor's or higher degree, with major study in or pertinent to the specialized field as distinguished from general education; or is performing work, comparable to that performed by professional employees, on the basis of specialized education or training and experience which has provided both theoretical and practical knowledge of the specialty, including knowledge of related disciplines and of new developments in the field.

5 C.F.R. § 551.207(a)(1). The intellectual and varied work test is met if the employee performs work that "is predominantly intellectual and varied in nature, requiring creative, analytical, evaluative, or interpretative thought processes for satisfactory performance." 5 C.F.R. § 551.207(b). The discretion and independent judgment test is met if the employee "frequently exercises discretion and independent judgment, under only general supervision, in performing the normal day-to-day work." 5 C.F.R. § 551.207(c).

NCUA's personnel form documenting Mr. Corrigan's promotion to the position of CU–11 examiner on January 14, 2001 reflects the agency's classification of the position as FLSA-exempt. *See* App. at 35 (Corrigan's Promotion Notification of Personnel Action Form). Nonetheless, Mr. Corrigan filed an administrative claim with OPM on March 26, 2003 seeking FLSA overtime pay and reimbursement for certain work travel. App. at 43–44, 74 (Corrigan's FLSA claim filed with OPM). On May 15, 2003, NCUA prepared a report evaluating the FLSA exemption status of the CU–11 credit union examiner position. *See* App. at 78–114 (NCUA's FLSA exemption report dated 5/15/03 with attachments). Referencing the agency's position description for a CU–11 credit union examiner, *see* App. at 83–87 (NCUA's position description for CU–11 credit union examiner), NCUA stated its rationale for classifying the position as FLSA-exempt under the professional exemption and specifically addressed each of the three tests required to meet the exemption as follows:

a) *Primary duty test:* To be hired into a Credit Union Examiner position, candidates must have knowledge of accounting, auditing, business theory, and finance equivalent to that attained by completing a bachelor's degree in accounting, finance, or business economics. This knowledge is required so that Examiners can independently conduct and complete examinations of federal credit unions and assure their safety and soundness.

b) *Intellectual and varied work test:* Credit Union Examiner work is primarily intellectual and varied in nature. Credit union examinations involve reviews of numerous credit union activities and many different and unrelated credit union processes and functions, such as accounting records maintenance, information systems and technology, handling and safeguarding of funds and assets, profitability, asset-liability management, investments, and compliance with regulations. Examiners conduct these reviews to determine the financial soundness of the credit union and the effectiveness of management's policies and procedures; assure compliance with applicable laws and regulations; and provide in a written report a complete analysis of risk to the National Credit Union Share Insurance Fund

and recommendations for correcting areas of concern. The report provides recommendations such as modifying the accounting systems, revising underwriting standards, and improving management information systems, reporting systems, and internal controls.

c) *Discretion and independent judgment:* At the CU–11 level, each Examiner supervises and conducts examinations of Federal credit unions in an assigned district. The Examiner independently plans, conducts, and reports on the complete examination, applying or adapting standard examining practices, while using substantial personal judgment. Based on his/her examinations, the Examiner determines which credit unions have risk areas that need further attention and meets with credit union officials to resolve conflicts and develop a plan of action to control or reduce risks and prevent significant financial losses.

App. at 79–81 (NCUA's 5/15/03 FLSA exemption report).

OPM reviewed Mr. Corrigan's claim together with NCUA's report. *See* App. at 117 (OPM's review dated 4/26/04 of Corrigan's FLSA claim). OPM stated that, although plaintiff "believe[d] he should be designated as nonexempt[,] ... [h]e [did] not provide a rationale as to why the work that he performs is non[-]exempt from the provisions of the FLSA." *Id.* Applying the regulatory criteria for a professional exemption, *see* 5 C.F.R. § 551.207, OPM performed an analysis of plaintiff's work in his position as a CU–11 examiner and concluded that Mr. Corrigan's position is exempt and thus, not covered by the provisions of the FLSA, App. at 119.

The court finds, as did NCUA and OPM, that Mr. Corrigan's work as a CU–11 credit union examiner met the criteria for the professional exemption from FLSA coverage. Mr. Corrigan earned both a bachelors and masters degree in business with substantial course work in accounting and finance. *See* App. at 27–31 (Corrigan's resume and transcripts). Prior to his employment with NCUA, Mr. Corrigan had worked as a financial consultant, an accountant, and a senior auditor with a public accounting firm. App. at 27–29 (Corrigan's resume). As described in NCUA's position description, a CU–11 credit union examiner must have: (1) "[k]nowledge of the theory, concepts and practices of accounting and auditing sufficient to analyze credit union financial statements and to apply Generally Accepted Accounting Principles;" (2) "[k]nowledge of business theory to understand credit unions and how they function;" and (3) "[k]nowledge of finance to understand the financial operations of credit unions." App. at 85 (NCUA's position description for CU–11 credit union examiner). Mr. Corrigan possesses and his position as a CU–11 examiner requires the type of specialized education and practical experience contemplated by the primary duty test set forth in 5 C.F.R. § 551.207(a)(1). The evaluative and analytical processes required to perform Mr. Corrigan's work as a CU–11 examiner, particularly, his review and assessment of the records maintenance, handling of funds and assets, and compliance with regulations by the credit union that he is examining, satisfy the intellectual and varied work test set forth in 5 C.F.R. § 551.207(b). Moreover, the judgment and discretion that is required for Mr. Corrigan to plan, conduct and report on each examination of a credit union and to determine which identified risk areas require further attention satisfy the discretion and independent judgment test set forth in 5 C.F.R. § 551.207(c).

The court is satisfied that Mr. Corrigan clearly meets the professional exemption criteria and therefore, is FLSA-exempt. Mr. Corrigan has not challenged the classification of his position as FLSA-exempt based on the professional exemption. *See generally* Compl.; Pl.'s Resp. Because Mr. Corrigan is not eligible for FLSA overtime as a matter of law, defendant is entitled to judgment. *See* RCFC 56(c). The court GRANTS defendant's motion for summary judgment with respect to plaintiff's FLSA claims that are not time-barred.

C. Plaintiff's Overtime Claims under FEPA

Defendant argues that, from plaintiff's amended complaint, "it appears that Mr.

Corrigan seeks overtime pay pursuant to FEPA, 5 U.S.C. § 5542, if he cannot recover pursuant to FLSA." Def.'s Mot. at 11 (citing Am. Compl. ¶ 2). As defendant points out, plaintiff cannot recover overtime pay under both FLSA and FEPA. *Id.* (citing 5 U.S.C. § 5542(c)).

█ FEPA authorizes the Office of Personnel Management (OPM) to "prescribe regulations . . . necessary for the administration" of the statute. 5 U.S.C. § 5548(a). OPM regulation 5 C.F.R. § 550.111(c) requires that "overtime work . . . be *ordered or approved only in writing* by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c) (emphasis added). In *Doe,* 372 F.3d at 1364, the Federal Circuit made clear that a federal employee cannot recover overtime pay under FEPA without prior written authorization or approval of the overtime work. That the employing agency may have induced the employee to work overtime is not enough. *Id.*

█ In this case, plaintiff conceded in his answers to Defendant's First Set of Interrogatories that "[a]ll authorization to work overtime was oral." App. at 466. The parties do not dispute that no written authorization or approval of Mr. Corrigan's overtime work exists and that plaintiff can not satisfy the writing requirement of the OPM regulation for the recovery of overtime pay under FEPA. Based on the undisputed fact, which was set forth in "matters outside the pleadings," that the required writing does not exist, *see* RCFC 12(b), the court finds that defendant is entitled to judgment as a matter of law and GRANTS summary judgment with respect to plaintiff's claim for overtime pay under FEPA.

**D. Plaintiff's Travel Expense Claims**

Defendant argues that plaintiff's travel expense claims lack merit. Def.'s Mot. at 25. Defendant asserts that NCUA properly denied the claims and that the General Services Board of Contract Appeals properly sustained the agency's denial of Mr. Corrigan's travel expense claims.[7] *Id.* at 18.

Plaintiff asserts that the FTR authorizes him "to travel for personal convenience . . . by an indirect route." Pl.'s Resp. at 3. He argues that under the FTR, his reimbursement is "limited to the cost of travel by a direct route . . . [or] to the constructive cost of the authorized method of transportation." *Id.* Without citing the source of his quoted authority, Mr. Corrigan defines "[c]onstructive cost [as] the 'sum, of per diem and transportation expenses.'"[8] *Id.*

The General Services Administration promulgates the FTR. 5 U.S.C. § 5707(a)(1) (2000) (authorizing the "Administrator of General Services [to] prescribe regulations necessary for the administration of [the travel and subsistence expenses of federal employees not employed by the judicial branch of the government]"). The FTR, 41 C.F.R. pts. 300–304 (2004), governs "travel by . . . Federal civilian employees . . . authorized to travel at Government expense." 41 C.F.R. § 300–1.1 (2004). The FTR provides that a federal employee is eligible for payment of his or her transportation expenses when performing official travel. *Id.*

NCUA, Mr. Corrigan's employing agency, has promulgated its own travel manual, *see* App. 485–501 (NCUA's Travel Manual), consistent with its broad statutory authority, *see* 12 U.S.C. § 1766(i)(2) (authorizing NCUA "to expend such funds . . . [and] make such pay-

---

7. As support for Mr. Corrigan's right to appeal NCUA's denial of his travel expense claims to the General Services Board of Contract Appeals, defendant cites 31 U.S.C. § 3702(a)(3). Def.'s Mot. at 18. The cited provision states:

The Administrator of General Services shall settle claims involving expenses incurred by Federal civilian employees for official travel and transportation, and for relocation expenses incident to transfers of official duty station.

31 U.S.C. § 3702(a)(3).

8. The cited definition of "constructive cost" appears to come from FTR provision 41 C.F.R. § 301–70.105 (2004). That provision limits an agency's reimbursement to an employee who elects to use a privately-owned vehicle on official travel "to the constructive cost of the [agency] authorized method of transportation, which is the sum of per diem and transportation expenses the employee would reasonably have incurred when traveling by the authorized method of transportation." 41 C.F.R. § 301–70.105(a).

ments . . . by way of reimbursement . . . as it may deem necessary" to discharge its functions under the governing law). NCUA's Travel Manual incorporates the provisions of the FTR. App. at 492 (NCUA's Travel Manual, ¶ 1–2). In a circumstance where "inconsistencies arise or exist between [NCUA's Travel Manual] and the FTR," the provisions of NCUA's Travel Manual "take[ ] precedence." *Id.*

Plaintiff seeks reimbursement for the following travel expenses: (1) a claim for constructive lodging expenses in Seattle, Washington; (2) a rental car claim for Anaheim, California; (3) a lodging and per diem claim for Orlando, Florida; and (4) a lodging and per diem claim for Alexandria, Virginia. Am. Compl. ¶¶ 11–12. In support of his claims, Mr. Corrigan points to the guidance provided by NCUA's Travel Manual for preparing a comparative cost statement that compares travel costs incurred with the constructive or hypothetical costs that would have been incurred if the employee had traveled by the least costly route or method. Pl.'s Resp. at 4 (citing NCUA's Travel Manual, [¶] 8–6 (addressing travel voucher preparation)). The portion of NCUA's Travel Manual referenced in plaintiff's response instructs an employee to submit a comparative cost statement when traveling, for personal reasons, by an indirect route or by a more expensive method. *Id.* The court addresses each claim in turn.

1.  Plaintiff's Claim for Constructive Lodging Expenses in Seattle, Washington

■ Because Mr. Corrigan requested his reassignment to a duty station in Seattle, Washington, NCUA did not pay his relocation expenses. App. at 37 (letter of 3/1/02 from Robert E. Blatner, Jr., NCUA Director of Region VI, to Corrigan) (stating that "I approve this move. . . . This move will not be paid by NCUA. You are responsible for all moving expenses."). Mr. Corrigan's reassignment to Seattle, Washington became effective on April 8, 2001. App. at 37 (letter of 3/1/02 from Robert E. Blatner, Jr., NCUA Director of Region VI, to Corrigan) (stating that "[t]he effective date [of the reassignment] will be April 8, 2001, the beginning of a

pay period"); *id.* at 38 (Corrigan's voluntary acceptance on 3/3/01 of the reassignment, at his own expense, to become effective on "April 8, 2001"); *id.* at 39 (Corrigan's Reassignment Notification of Personnel Action Form) (indicating effective date of "4–08–01").

"In advance of his relocation, Mr. Corrigan was detailed [by NCUA] to Seattle and Montana for the period from March 19 to [March 30,] 2001." App. at 123 (NCUA's response brief filed on 12/3/01 in Corrigan's General Services Board of Contract Appeals (GSBCA) appeal); *id.* at 201 (GSBCA's decision of 12/6/02). Plaintiff drove his personal vehicle to Seattle for his assignment rather than use commercial transportation. *Id.*; DPFUF ¶ 30. "During his detail in Seattle from March 19, 2001 until March 25, 2001, Mr. Corrigan stayed with relatives in Seattle." DPFUF ¶ 31; App. at 123 (NCUA's response brief filed on 12/3/01 in Corrigan's GSBCA appeal). Plaintiff left his car in Seattle when he completed his assignment in Seattle. DPFUF ¶ 32; App. at 123 (NCUA's response brief filed on 12/3/01 in Corrigan's GSBCA appeal). Mr. Corrigan traveled to Montana for his assignment by commercial transportation and then traveled from Montana back to California by commercial transportation. DPFUF ¶ 32; App. at 123–24 (NCUA's response brief filed on 12/3/01 in Corrigan's GSBCA appeal). Mr. Corrigan submitted a travel voucher seeking, in part, the constructive cost of staying with relatives while on assignment in Seattle. DPFUF ¶ 33; App. at 124–25 (NCUA's response brief filed on 12/3/01 in Corrigan's GSBCA appeal). NCUA denied that claim. DPFUF ¶ 33; App. at 125 (NCUA's response brief filed on 12/3/01 in Corrigan's GSBCA appeal). The GSBCA also denied the claim. App. at 201–05 (GSBCA's decision of 12/6/02).

Section 301–11.12(c) of the FTR permits an agency to reimburse an employee who lodges, with or without charge, with friends or relatives during official travel in the following manner:

[The employee] may be reimbursed for additional costs [the] host incurs in accommodating [the employee] only if [the employee] [is] able to substantiate the costs

and [the employing] agency determines them to be reasonable. [The employee] will not be reimbursed the cost of comparable conventional lodging in the area or a flat "token" amount.

41 C.F.R. § 301–11.12(c). Paragraph 5–4(B)(3) of NCUA's Travel Manual also specifically addresses the issue of reimbursement for lodging with friends or relatives and is substantially similar to the FTR provision, stating:

> When an employee obtains lodging from friends or from relatives, with or without charge, no part of the per diem allowance for lodging will be allowed unless the host actually incurs additional costs in accommodating the traveler. Only additional costs that can be substantiated by the employee and that are determined to be reasonable by NCUA will be allowed. Costs based on room rates for commercial lodging or flat "token" amounts will not be considered reasonable.

App. at 498 (NCUA's Travel Manual, ¶ 5–4(B)(3)).

Plaintiff's claim for lodging costs is a claim for "constructive costs." Pl.'s Resp. at 6. Plaintiff's reliance on guidance in NCUA's Travel Manual regarding a comparative cost statement to support his lodging claim is misplaced. See id. at 4 (citing NCUA's Travel Manual, [¶] 8–6 (addressing travel voucher preparation)). The applicable NCUA travel regulation limits an employee's reimbursement for lodging with relatives to "additional costs" "actually incur[red]" by the host, "substantiated" by the employee, and found to be reasonably by NCUA. See App. at 498 (NCUA's Travel Manual, ¶ 5–4(B)(3)); accord 41 C.F.R. § 301–11.12(c) (correlative FTR provision). The agency's requirement that actual costs be substantiated and its refusal to accept costs based on rates for commercial rooms make clear that NCUA will not provide reimbursement for lodging with relatives based on constructive costs. See App. at 498 (NCUA's Travel Manual, ¶ 5–4(B)(3)). Here, plaintiff has failed to offer any substantiation of additional costs incurred by his relatives in connection with his lodging while on assignment in Seattle. See generally Pl.'s Resp. Instead, he has offered his calculation of constructive costs. Id. at 4. Because plaintiff has failed to support his claim for lodging with relatives while on assignment in Seattle, Washington in accordance with the applicable travel regulations, Mr. Corrigan is not entitled to reimbursement for this claimed travel expense.

### 2. Plaintiff's Rental Car Claim for Anaheim, California

██ NCUA detailed plaintiff to Butte, Montana from November 26–30, 2001, sent plaintiff to a training seminar in Anaheim, California, from December 3–7, 2001, and detailed plaintiff to Salt Lake City, Utah, from December 10–14, 2001. App. at 225 (Corrigan's GSBCA appeal of 3/17/03 regarding NCUA's denial of his rental car claim). Mr. Corrigan did not travel back to his permanent duty station, Seattle, Washington on the weekends. Id.; DPFUF ¶ 36. Rather, he stayed with his son in southern California between the assignments preceding and following the training seminar. See App. at 225 (Corrigan's GSBCA appeal of 3/17/03 regarding NCUA's denial of his rental car claim); DPFUF ¶¶ 36–37. During his weekends in southern California, Mr. Corrigan rented a car without authorization from his supervisor and for his own personal convenience. App. at 225 (Corrigan's GSBCA appeal of 3/17/03 regarding NCUA's denial of his rental car claim); id. at 470 (Corrigan's response to defendant's request for admission no. 4); id. at 472 (Corrigan's response to defendant's request for admission no. 10). Mr. Corrigan sought reimbursement for the car rental costs for the two weekends. App. at 371 (GSBCA's decision of 5/22/03 denying Corrigan's car rental claim). NCUA denied the claim and the GSBCA denied the claim by decision dated May 22, 2003. Id.

Section 301–10.450 of the FTR permits an employee to rent a car when the employing agency "determine[s] that use of a rental vehicle is advantageous to the Government and … specifically authorize[s] such use." 41 C.F.R. § 301–10.450. Paragraph 2–8(A) of NCUA's Travel Manual states:

> Rental of vehicles will be approved only when necessary for official business. Situations where rental vehicles may be need-

ed are when other transportation to lodging or the work site is not readily available .... Also, rental vehicles may be approved if the cost of available ground transportation exceeds the cost of renting a vehicle. In no case will the rental of a vehicle be approved on the basis of personal off-duty activities.

App. at 493 (NCUA's Travel Manual, ¶ 2–8(A)).

The pertinent travel regulations speak directly to plaintiff's situation involving the unauthorized rental of a vehicle for personal, unofficial use. NCUA's travel regulation explicitly and without exception prohibits the approval of a rental car for "personal off-duty activities." *Id.* (stating that "[i]n no case" will a car rental be approved for personal non-business use). Because Mr. Corrigan seeks reimbursement for a travel expense that can not be approved under the applicable travel regulations, he can not recover the claimed travel expense.

### 3. Plaintiff's Lodging and Per Diem Claim for Orlando, Florida

■ Plaintiff traveled on official business from Seattle, Washington to attend a conference in Orlando, Florida during the period August 11–16, 2002. DPFUF ¶ 42; App. at 439 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging in Orlando, Florida). NCUA "advised the employees traveling to the conference that they could use a discount airline ticket and stay an extra night at a hotel if the combined cost of the extra night at the hotel and the discount airline ticket would result in a savings to the Government." App. at 439 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging in Orlando, Florida). Mr. Corrigan reserved a one-way ticket from Seattle to Orlando. *Id.* at 440 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging in Orlando, Florida). He also reserved a one-way return ticket to Seattle from Fort Lauderdale, Florida, not Orlando, on August 24, 2002, eight days after his official business ended in Orlando. *Id.* Mr. Corrigan does not dispute that his trip to Fort Lauderdale was for personal reasons. *Id.* at 480 (Corrigan's

response to defendant's request for admission no. 38).

"Because Mr. Corrigan was able to obtain a discounted airline ticket to Orlando, NCUA paid for an additional night of lodging for him in Orlando [the night] before the conference began." Def.'s Mot. at 22; *see also* Def.'s Reply at 11; App. at 439–40 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging in Orlando, Florida). Accordingly, on August 10, 2002, the night before the conference in Orlando began, and during the conference in Orlando, Mr. Corrigan stayed at the Wyndham Palace at the agency's expense. App. at 440 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging in Orlando, Florida). The hotel billed the lodging costs directly to NCUA at a rate of $99 per night, and the agency paid the billed lodging costs. *See id.*

On August 16, 2002, the last day of the conference in Orlando, Mr. Corrigan traveled to Fort Lauderdale and spent the night at a Holiday Inn Express en route. *Id.* Mr. Corrigan sought reimbursement for his lodging at the Wyndham Palace on August 10, 2002, the night before the conference, submitting a claim for a lodging expense of $125. *Id.* He also sought reimbursement for his lodging at the Holiday Inn Express during his personal travel to Fort Lauderdale, Florida. *Id.* NCUA denied plaintiff's claims for these lodging expenses and, by decision dated October 3, 2003, the GSBCA also denied plaintiff's claims. *Id.* at 440, 442–43 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging in Orlando, Florida).

Without citing to a particular regulation, Mr. Corrigan argues that "[b]ased on a cost comparison between actual and constructive costs, the agency should have paid [him] for [his] full claim under the Federal Travel Regulations." Pl.'s Resp. at 8. He contends that "the FTR is binding while the NCUA Travel Manual is not." *Id.*

Plaintiff's request for reimbursement based on a cost comparison between actual and constructive costs is not supported under the applicable law. And, contrary to plaintiff's contention, the provisions of both the FTR and NCUA's Travel Manual govern. *See* App. at 492 (NCUA's Travel Manual,

¶ 1–2) (stating that the provisions of the FTR are incorporated into NCUA's Travel Manual). Section 301–11.100 of the FTR provides that "[w]hen ... overnight lodging is required [, an employee] [is] reimbursed [his or her] *actual lodging cost* not to exceed the maximum lodging rate for the [temporary duty] location or stopover point." 41 C.F.R. § 301–11.100 (emphasis added). Paragraph 5–4(A)(4) of NCUA's Travel Manual states:

> For each full calendar day ... the employee is in travel status and lodging is required, the *actual cost of lodging incurred* by the traveler, up to the maximum allowed, will be added to the applicable M & IE [ (meals & incidental expenses) ] rate.

App. at 497 (NCUA Travel Manual, ¶ 5–4(A)(4)(b)) (emphasis added).

The applicable travel regulations limit reimbursement for lodging expenses to the "actual cost" incurred by an employee on official travel. Because Mr. Corrigan's lodging expense of $99 for the night of August 10, 2002 at the Wyndham Palace was directly billed to NCUA and paid by NCUA, he cannot recover his claimed lodging expense of $125 for that night.

█ Section 301–2.4 of the FTR also provides that an employing agency "will not pay for excess costs resulting from circuitous routes, delays, or luxury accommodations or *services unnecessary or unjustified in the performance of official business.*" 41 C.F.R. § 301–2.4 (emphasis added). Paragraph 5–4 of NCUA's Travel Manual provides guidance regarding "[t]he per diem allowances authorized *for all official travel* ... [which are to] be computed under the lodgings-plus M & IE [(meals & incidental expenses)] system described [more particularly in the related subparagraphs]." App. at 497 (NCUA Travel Manual, ¶ 5–4(A)) (emphasis added).

The applicable travel regulations limit reimbursement for lodging expenses to expenses incurred during travel for official business. Mr. Corrigan does not dispute that his travel to Fort Lauderdale, and therefore his lodging at the Holiday Inn Express while traveling to Fort Lauderdale, was for personal reasons. Because Mr. Corrigan's lodging expense at the Holiday Inn Express was not in connection with any offi-cial travel, that claimed expense is not reimbursable.

### 4. Plaintiff's Lodging and Per Diem Claim for Alexandria, Virginia.

█ On September 29, 2002, plaintiff traveled on official business from Seattle to Alexandria, Virginia to attend a training session that was to run from September 30, 2002 until noon on October 4, 2002. App. at 440 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging and per diem expenses in Alexandria, Virginia). On October 2, 2002, Mr. Corrigan communicated by e-mail with his supervisor about his return travel to Seattle. *Id.* Mr. Corrigan advised his supervisor that, although there was a non-stop flight from Dulles International Airport to Seattle on the afternoon of October 4, 2002, he would not take that flight based on his experience that Dulles was "not pleasant." *Id.* at 440–41. Mr. Corrigan further advised his supervisor that he planned to return to Seattle on the morning of October 5, 2002 from Reagan National Airport. *Id.* at 441. Plaintiff's supervisor advised Mr. Corrigan that the agency would not authorize the reimbursement of lodging expenses for the night of October 4, 2002 because plaintiff "had ample time to return to Seattle on the afternoon of October 4[, 2002]." *Id.* Plaintiff does not dispute that there were at least two non-direct flights from Reagan National Airport to Seattle on the afternoon of October 4, 2002 and that there was at least on non-stop flight from Dulles International Airport to Seattle on the afternoon of October 4, 2002. *Id.; see also generally* Pl.'s Resp.

Mr. Corrigan took annual leave for the afternoon of October 4, 2002. App. at 441 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging and per diem expenses in Alexandria, Virginia). He spent the night in the Washington, DC area and incurred lodging expenses for the night of October 4, 2002. *Id.* He returned to Seattle on October 5, 2002. *Id.* Mr. Corrigan sought reimbursement for lodging and per diem expenses for the night of October 4, 2002 and reimbursement for meals and incidental expenses (M & IE) for October 5, 2002. *Id.*

NCUA denied his claim for lodging expenses on the night of October 4, 2002 and for M & IE on October 5, 2005. *Id.* By decision dated October 3, 2003, the GSBCA also denied his claim. *Id.* at 443 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging and per diem expenses in Alexandria, Virginia).

Mr. Corrigan argues that his claimed expenses for lodging on the night of October 4, 2002, and for per diem on October 5, 2002, "relate to a situation that required [him] to work from 8:00 am to 11:00 pm." Pl.'s Resp. at 8. Citing section 301–11.20 of the FTR, he asserts that he "was entitled to take an overnight break." *Id.* (citing 41 C.F.R. § 301–11.20).

Section 301–11.20 of the FTR provides, in pertinent part, that an employing agency "may authorize a rest period not in excess of 24 hours at either an intermediate point or at [an employee's] destination if . . . [t]ravel is by a direct or usually traveled route." 41 C.F.R. § 301–11.20(a)(3). Here, plaintiff acknowledges that NCUA did not authorize his overnight break. *See* Pl.'s Resp. at 8 (stating that "[t]he agency refused to pay for the break").

The FTR provides that an employing agency "will not pay for *excess costs* resulting from circuitous routes, delays, or luxury accommodations *or services unnecessary or unjustified in the performance of official business.*" 41 C.F.R. § 301–2.4 (emphasis added). The GSBCA has specifically considered and denied a claim for the reimbursement of travel expenses that was substantially similar to plaintiff's claim here, holding that:

> An employee who delays his return from a temporary duty (TDY) assignment . . . may not be reimbursed for lodging the night before his return at a hotel near the airport because he was not in official TDY status on the evening he incurred the lodging expense, and the delay in his return was for personal convenience.

*Leo Bosner*, GSBCA No. 15855–TRAV, 2003–1 B.C.A. (CCH) ¶ 32,234, 2003 WL 1753207, at *1, 2003 GSBCA LEXIS 64, at *1 (Mar. 28, 2003). Mr. Corrigan's delay in returning to Seattle was for his personal convenience.

The expenses he incurred for lodging on the night of October 4, 2005 and for meals and incidentals on October 5, 2004 were not in furtherance of official business and were not approved. Prior to incurring the claimed travel expenses, Mr. Corrigan learned from his supervisor that the expenses incurred for an overnight stay in Washington, DC would not be approved on the ground that plaintiff "had ample time to return to Seattle on the afternoon of October 4[, 2002]." App. at 440 (GSBCA's decision of 10/3/03 denying Corrigan's claims for lodging and per diem expenses in Alexandria, Virginia). The applicable travel regulation and persuasive case law prohibit the reimbursement of Mr. Corrigan's claimed lodging and per diem expenses in Alexandria, Virginia.

As a matter of law, Mr. Corrigan is not entitled to reimbursement for any of his claimed travel expenses. Accordingly, defendant is entitled to summary judgment on these claims.

### III. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED with respect to plaintiff's FLSA overtime claims that accrued three years before the filing of the complaint. Defendant's motion for summary judgment is GRANTED with respect to plaintiff's remaining FLSA overtime claims, with respect to plaintiff's FEPA overtime claims and with respect to plaintiff's travel expense claims. The Clerk of the Court is directed to ENTER JUDGMENT for defendant. No costs.

IT IS SO ORDERED.