**John L. CORRIGAN, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 07–541C.

United States Court of Federal Claims.

June 18, 2008.

John L. Corrigan, pro se, Auburn, WA.

Ellen M. Lynch, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With her was Jeanne E. Davidson, Director, Commercial Litigation Branch. Of counsel, Jon Canerday, Trial Attorney, National Credit Union Administration, Alexandria, VA.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

The plaintiff, John Corrigan, filed a complaint (case no. 07–cv–00541) (the 2007 case) in this court, *pro se*, seeking overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–216 (2000), and the Federal Employees Pay Act (FEPA), 5 U.S.C. §§ 5542, 5544, 5546 (2000). In 2004, Mr. Corrigan had filed an earlier lawsuit (case no. 04–cv–1587) which was decided in 2005 (the 2004 case). *Corrigan v. United States*, 68 Fed.Cl. 589 (2005). The 2004 complaint used virtually identical language as that used in the 2007 complaint currently before the court, except that the chronological period of time for which relief was claimed is different. The identical language used in the 2004 and 2007 complaints seeks overtime compensation, pursuant to the FLSA and the FEPA, for the following circumstances: 1) "[s]uffered and permitted work in the form of claimed 'commuting' time for overnight travel away from the duty station. (For overnight travel examiners are required to deduct the first hour going to and the last hour returning from travel.)"; and 2) "[s]uffered and permitted work in the form of claimed 'commuting' time for travel to and from the work site within the official duty station. (Commuting time should not be deducted in the case of a CU–11 credit union examiner as they work from their home and have no other official 'office')." In

the 2004 case, Mr. Corrigan also requested reimbursement for previously denied travel expenses under the National Credit Union Administration's (NCUA) Travel Manual, the Federal Travel Regulation (FTR), and the Contract Disputes Act of 1978. In the 2004 complaint, plaintiff sought compensation for the period December 1, 1999 to October 20, 2004, in the amount of $29,000.00. In the 2007 case, plaintiff seeks compensation for the period July 1, 2005 to June 30, 2007, in the amount of $6,800.00. Plaintiff also states in the 2007 complaint, that "[a]n additional prior year is to be considered if the situation demands: July 1, 2004 to June 30, 2005," with no dollar claim indicated in the complaint for this additional, possible claim.

In response to the plaintiff's 2007 complaint, the government filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). The government contends that the plaintiff should be precluded from bringing this suit under the doctrine of issue preclusion, because the issues raised in the present suit were previously litigated and decided in the suit brought by the plaintiff in this court in 2004, although for different years. *Corrigan v. United States*, 68 Fed.Cl. 589 (2005). The defendant asserts that all factors for issue preclusion have been met: 1) the issues in both actions are the same, even though the time periods for which compensation is requested differ; 2) the matters at issue were actually litigated; 3) the decision on the issues was necessary to the court's judgment in the 2004 lawsuit; and 4) the plaintiff was given a full and fair opportunity to litigate his claims.

According to the factual findings in the 2004 case, the plaintiff is a CU–11[1] credit union examiner with the NCUA.[2] *Id.* at 591. The NCUA is responsible for regulating, inspecting, and insuring federally chartered credit unions, federally insured state-char-

---

1. Positions at NCUA are designated by the prefix "CU."

2. The plaintiff's filings before the court do not provide new or revised facts regarding Mr. Corrigan's current position. Based on plaintiff's claims, however, it would appear, at least for the period of time included in plaintiff's 2007 com-

plaint, that Mr. Corrigan was still performing the same job, at least at the level of CU-11 credit union examiner at the NCUA. Moreover, on November 16, 2007, when defendant filed its motion to dismiss, defendant asserted that Mr. Corrigan was still employed by the NCUA.

tered credit unions, and federally insured corporate credit unions. *See id.* at 590. NCUA examiners, such as Mr. Corrigan, aid federal credit union employees in performing their duties through on-site inspections of the credit unions. Credit union examiners work from home and travel to credit unions to conduct their assessments. *Id.* at 590–91.

Mr. Corrigan began working for the NCUA in November 1999 in the position of a CU–9 credit union examiner, a non-exempt position under the provisions of the FLSA. *See id.* at 591. He received a promotion to a CU–11 credit union examiner position on January 14, 2001, when he also was assigned a district of credit unions. *See id.* Unlike Mr. Corrigan's original position as a CU–9 credit union examiner, the CU–11 position is classified as professionally exempt under the FLSA, meaning that the position is not eligible for overtime compensation. *See id.* at 591, 595. It appears that as of the filing of the 2007 complaint, Mr. Corrigan continued to work in the position of CU–11 credit union examiner, at least at the level of CU–11, and at least through June 30, 2007.

In the 2004 lawsuit, after briefing by both parties, in a thorough and carefully constructed opinion, the court granted the defendant's RCFC 12(b)(6) partial motion to dismiss, and also granted defendant's partial motion for summary judgment, dividing Mr. Corrigan's claims into the separate issues of overtime compensation and reimbursement of travel expenses. First, the presiding judge, Emily C. Hewitt, dismissed any claims that had accrued three years or more before the plaintiff's filing of the suit—that is, claims that had accrued prior to October 20, 2001—holding that the claims were time-barred under the FLSA. *Id.* at 592–93. Second, the court ruled that the plaintiff's position as a CU–11 credit union examiner was professionally exempt under the FLSA, as determined by the NCUA and the Office of Personnel Management, and, thus, Mr. Corrigan was not entitled to overtime pay under that statute and the implementing regulations. *Id.* at 595. Third, the court held that Mr. Corrigan was not entitled to overtime pay under FEPA because he admittedly had not obtained written authorization or approv-

al of the overtime work, as required pursuant to 5 C.F.R. § 550.111(c). *Id.* at 596. Finally, the court analyzed and rejected the plaintiff's travel expense reimbursement claims for constructive lodging in Seattle, WA, a rental car claim in Anaheim, CA, lodging and per diem claims for Orlando, FL, and lodging and per diem claims for Alexandria, VA. *Id.* at 596–601.

Mr. Corrigan then filed a motion for reconsideration of Judge Hewitt's 2004 opinion. After an in-depth analysis, once again, following additional briefing by both parties, in another thorough and well-developed opinion, Judge Hewitt denied the reconsideration motion, restating that plaintiff was not eligible for overtime compensation under either the FLSA or the FEPA. *Corrigan v. United States,* 70 Fed.Cl. 665, 674 (2006). On appeal, in an unpublished opinion, the United States Court of Appeals for the Federal Circuit affirmed the trial court's decisions on all issues. *Corrigan v. United States,* 223 Fed. Appx. 968, 968–72 (2007). Thereafter, the United States Supreme Court summarily denied the petition for writ of certiorari brought by Mr. Corrigan. *Corrigan v. United States,* —— U.S. ——, 128 S.Ct. 338, 169 L.Ed.2d 155 (2007).

## DISCUSSION

### Standard of Review

A court may dismiss a plaintiff's claims for failure to state a claim when no additional proceedings would enable the plaintiff to prove facts entitling him or her to prevail. *New York Life Ins. Co. v. United States,* 190 F.3d 1372, 1377 (Fed.Cir.1999); *Constant v. United States,* 929 F.2d 654, 657 (Fed.Cir.) ("Nor is due process violated by a dismissal, even sua sponte, for failure to state a claim. . . . [N]o additional proceedings could have enabled Constant to prove any set of facts entitling him to prevail on his claim for relief."), *cert. denied,* 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 973 (1991); *see also Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 793–94 (Fed.Cir. 2000) (The particular facts of the case did not support a sua sponte dismissal for failure to state a claim.). The court should dismiss a case for failure to state a claim only if "it

appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir.2000); *New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (1997); *Consolidated Edison Co. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied*, 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *Gould, Inc. v. United States*, 67 F.3d 925, 929–30 (Fed.Cir.1995); *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States*, 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion [to dismiss] must be denied.'"); *RCS Enterps., Inc. v. United States*, 46 Fed.Cl. 509, 513 (2000).

When deciding on a motion to dismiss based on failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed.Cir.), *reh'g denied* (2006); *Boyle v. United States*, 200 F.3d at 1372; *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995); *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States*, 48 F.3d at 1167 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Hamlet v. United States*, 873 F.2d at 1416; *Ho v. U.S.*, 49 Fed.Cl. 96, 100 (2001), *aff'd*, 30 Fed.Appx. 964 (2002); *Alaska v. United States*, 32 Fed. Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiffs' claim for relief, however, the plaintiffs cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v.*

*Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988); *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404–05 (1994). "A motion to dismiss under Rule [12(b)(6)] for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States*, 156 F.3d at 1370.

A complaint also can be dismissed on a Rule 12(b)(6) motion "when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 at 708 (3d ed.2008). To qualify, the defense "has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion." *Id.; see also Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993) (citing Wright & Miller, etc. [sic] § 1357 at 348–49 (2d ed.1990); *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir.), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992)) (holding that, although Rule 12(b)(6) motions are not generally intended to address the merits of affirmative defenses, in the limited circumstances when the complaint gives rise to one, the defense may be raised under Rule 12(b)(6), as long as it appears clearly on the face of the complaint).

Affirmative defenses that have been considered under a Rule 12(b)(6) motion to dismiss, include, among others, "various types of estoppel" and "the barring effect of res judicata and related preclusion principles." 5B Wright & Miller, *Federal Practice and Procedure* § 1357 at 722, 728 (3d ed.2008); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (noting that the dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.) (holding that the affirmative defense of res judicata may be upheld on a motion to dismiss under Rule

12(b)(6) "when all relevant facts are shown by the court's own records, of which the court takes notice"), *cert. denied,* 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992). Moreover, "a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews v. Daw,* 201 F.3d 521, 524 n. 1 (4th Cir.2000). *See, e.g., United States v. Ford Motor Co.,* 497 F.3d 1331 (Fed.Cir.2007) (in which defendant filed a Rule 12(b)(6) motion to dismiss asserting the doctrine of issue preclusion).

The court acknowledges that the plaintiff is proceeding *pro se.* Normally, *pro se* plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). The United States Court of Appeals for the Federal Circuit has stated that:

> Where, as here, a party appeared *pro se* before the trial court, the reviewing court may grant the *pro se* litigant leeway on procedural matters, such as pleading requirements. Indeed, the Supreme Court has recognized this less demanding standard. In *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), the Court concluded that the pleadings of *pro se* litigants should be held to a lesser standard than those drafted by lawyers when determining whether the complaint should be dismissed for failure to state a claim, because "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Id.* at 9, 101 S.Ct. 173; *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers" when determining whether to dis-

miss the complaint for failure to state a claim).

*McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1356 (Fed.Cir.2007); *see also Forshey v. Principi,* 284 F.3d 1335, 1357 (Fed.Cir.), *cert. denied,* 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002).

However, "there is no 'duty [on the part] of the trial court ... to create a claim which appellant has not spelled out in his pleading....'" *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original); *see also Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007). "A complaint that is ... confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation...." *Scogin v. United States,* 33 Fed.Cl. at 293 (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 775–76 (7th Cir.1994)) (alterations in original and citations omitted); *see also Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925) ("The petition may not be so general as to leave the defendant in doubt as to what must be met.") (citations omitted). "This latitude, however, does not relieve a pro se plaintiff from meeting jurisdictional requirements." *Bernard v. United States,* 59 Fed.Cl. 497, 499, *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.), *reh'g denied* (2004); *see also Edelmann v. United States,* 76 Fed.Cl. 376, 378 (2007). Moreover, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998).

*Time-barred Overtime Claims for the Period July 1, 2004 to June 30, 2005*

In plaintiff's 2007 complaint currently before this court, in addition to his claims for compensation for July 1, 2005 to June 30, 2007, Mr. Corrigan includes a conditional claim that "[a]n additional *prior* year is to be considered if the situation demands: July 1, 2004 to June 30, 2005." (emphasis added). Plaintiff does not indicate what situation, if any, could trigger this claim.

Under the FLSA, "any cause of action ... [for] unpaid overtime compensation ... may

be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a) (2000); *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

In the earlier, 2004 case brought by Mr. Corrigan, defendant argued that plaintiff's FLSA overtime claims which had accrued prior to October 20, 2001, three years before plaintiff filed suit in the 2004 action, should be dismissed because they were barred by the statute of limitations. *Corrigan v. United States*, 68 Fed.Cl. at 592. Defendant accepted theoretical application of a three-year bar for willful violation of the statute, but only for the purposes of the pending motion to dismiss before Judge Hewitt. *Id.* The court in the 2004 case granted defendant's motion to dismiss, stating that even assuming plaintiff could demonstrate that defendant had willfully violated the FLSA, plaintiff's overtime claims that had accrued three years or more before the filing of plaintiff's complaint on October 20, 2001 were time-barred. *Id.* at 593.

In the 2007 case before the court, plaintiff has included a request for overtime compensation under the FLSA for the time period July 1, 2004 to June 30, 2005, "if the situation demands," a phrase not further defined by plaintiff. The complaint currently before the court was filed on July 17, 2007. Pursuant to the two-year statute of limitations mandated by the FLSA, plaintiff's claim for the period July 1, 2004 to June 30, 2005 was required to be filed on or prior to June 30, 2007 and is time-barred. Because the time limitations for filing suit under the FLSA was an issue raised and litigated in the 2004 case, the plaintiff had actual notice of the applicable limitations period. Moreover, plaintiff is not entitled to an assumption that defendant willfully violated the statute, and that the longer, three-year statute of limitations period is applicable to plaintiff's 2007 complaint. There is no evidence in the record before this court that there was any intentional action by the defendant to violate the FLSA. The fact that willfulness may have been conceded for the purposes of defendant's motion to dismiss in the 2004 action does not mean that the point is conceded in the current action. Having previously litigated the issue, plaintiff was, or, at the very least, should have been aware that the statute of limitations under the FLSA is two years. If plaintiff wanted to litigate an overtime claim for the time period July 1, 2004 to June 30, 2005, he should have filed the claim within the applicable statute of limitations. Accordingly, plaintiff's overtime claim for the period July 1, 2004 to June 30, 2005 is dismissed.

*Issue Preclusion*

Under the doctrine of issue preclusion, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982); *see also Tex. Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed.Cir.) (citing Restatement (Second) of Judgments § 27), *reh'g denied, en banc suggestion declined* (1996), *cert. denied*, 520 U.S. 1228, 117 S.Ct. 1818, 137 L.Ed.2d 1027 (1997). Issue preclusion is the modern term for both direct and collateral estoppel. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4416 at 386 (2d ed.2008). The doctrine of issue preclusion

> is available whether or not the second action involves a new claim or cause of action. If the second action involves the same claim or cause of action as the first, issue preclusion may be called direct estoppel. If a new claim or cause of action is involved, issue preclusion is commonly called collateral estoppel.

*Id.* at 393.

According to the United States Supreme Court, application of the doctrine of collateral estoppel "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United*

*States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (citing *S. Pac. R.R. Co. v. United States,* 168 U.S. 1, 49, 18 S.Ct. 18, 42 L.Ed. 355 (1897); *Hart Steel Co. v. R.R. Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917)). Collateral estoppel serves the dual purpose of "protect[ing] litigants from the burden of relitigating an identical issue and promot[ing] judicial economy by preventing needless litigation." *Morgan v. Dep't of Energy,* 424 F.3d 1271, 1274 (Fed. Cir.2005) (citing *Arkla, Inc. v. United States,* 37 F.3d 621, 624 (Fed.Cir.1994)). By affording a claimant only one opportunity to obtain redress, the doctrine conserves judicial resources, fosters reliance upon judicial decisions, immunizes against the possibility of inconsistent decisions, and protects litigants from costly, vexatious and needless litigation. *See Montana v. United States,* 440 U.S. at 154, 99 S.Ct. 970.

■ The United States Court of Appeals for the Federal Circuit specifies that a party asking the court to apply collateral estoppel must establish that:

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Dana v. E.S. Originals, Inc.,* 342 F.3d 1320, 1323 (Fed.Cir.2003) (quoting *Pleming v. Universal–Rundle Corp.,* 142 F.3d 1354, 1359 (11th Cir.1998)); *see also Mother's Rest., Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983) (citing 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.443[1] (2d ed.1983); Restatement (Second) of Judgments §§ 27, 39 (1980)); *see also In re Trans Tex. Holdings Corp.,* 498 F.3d 1290, 1297 (Fed.Cir.2007) (quoting *Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d 1360, 1365–66 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (2000)).

In the 2007 case currently before the court, the plaintiff is precluded from bringing his claims under the doctrine of issue preclusion. All four factors of issue preclusion are satisfied: 1) the issues in the two cases are identical, although the claims are for different time periods, and there has been no material change in fact or law between the actions; 2) the issues were actually litigated in the prior action; 3) the issues were necessary to the court's judgment in the preceding 2004 action; and 4) the plaintiff was given a full and fair opportunity to litigate his claims in the earlier action. *See, e.g., Dana v. E.S. Originals, Inc.,* 342 F.3d at 1323.

(1) Identical Issues

Regarding cases in which the doctrine of collateral estoppel is at issue, "the [initial] inquiry is whether the point or question presented for determination in the subsequent action is the same as that litigated and determined in the original action." *United States v. Moser,* 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262 (1924) (citing *Cromwell v. County of Sac,* 94 U.S. 351, 352, 353, 24 L.Ed. 195 (1876)). Even if the requested relief in the second suit differs from that in the first suit, collateral estoppel applies "when the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties or their privies." *New Orleans v. Citizens' Bank,* 167 U.S. 371, 396, 17 S.Ct. 905, 42 L.Ed. 202 (1897).

■ Collateral estoppel also may apply in instances when there is a lack of total identity between the events giving rise to the first and second lawsuits, for example when the events raised in the second lawsuit are the same or substantially similar to those that gave rise to the first suit, but took place at a different time. Restatement (Second) of Judgments § 27 comment c; *see Comm'r v. Sunnen,* 333 U.S. 591, 598–600, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (citing *Tait v. West. Md. Ry. Co.,* 289 U.S. 620, 624, 53 S.Ct. 706, 77 L.Ed. 1405 (1933)) (holding that in cases involving different tax years, collateral estoppel can apply as long as the issues raised in both actions are identical, and there are no significant modifications in fact or law in the intervening period); *see also Montana v.*

*United States*, 440 U.S. at 158–62, 99 S.Ct. 970 (holding that, although the contract at issue in the second proceeding did not contain a critical provision included in the contract at issue in the original action, collateral estoppel was still applicable in order to prevent " 'redundant litigation [over] the identical question of the statute's application ....' " because "the factual and legal context ... ha[d] not materially altered" (quoting *Tait v. W. Md. Ry. Co.*, 289 U.S. at 624, 53 S.Ct. 706) (alteration in original)); *Ammex, Inc. v. United States*, 384 F.3d 1368 (Fed.Cir. 2004) (holding that the issues between the first and second suit were considered identical and the fact that the tax years differed was "irrelevant"), *cert. denied*, 544 U.S. 948, 125 S.Ct. 1697, 161 L.Ed.2d 525 (2005); *EEOC v. American Airlines*, 48 F.3d 164, 171–72 (5th Cir.1995) (holding that plaintiff's suit challenging defendant's hiring policies was barred by collateral estoppel in light of the absence of any change in controlling facts or legal principles in the instant case and that of a previous similar case); *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992), *cert. denied*, 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993) (holding that plaintiff was collaterally estopped from litigating under the Trademark Act because there was no "legally significant change" between the facts giving rise to the original suit and the current suit). The collateral estoppel doctrine is "designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." *Comm'r v. Sunnen*, 333 U.S. at 599, 68 S.Ct. 715.

■ Although the time periods for which Mr. Corrigan requests compensation are different between the 2004 action and the present 2007 case, the parties and the legal and factual issues necessary to reach a decision on the claims raised by Mr. Corrigan in the two cases are otherwise identical. The main issue in both matters is whether the plaintiff, as a CU–11 credit union examiner, is entitled to overtime compensation under the FLSA or the FEPA. The specific circumstances for

which Mr. Corrigan sought overtime pay in the 2004 complaint were, " '[s]uffered and permitted work in the form of claimed 'commuting' time for overnight travel away from duty station,' " and " '[s]uffered and permitted work in the form of claimed 'commuting' time for travel to and from the work site within the official duty station,' " for the periods extending from December 1, 1999 to October 20, 2004. *Corrigan v. United States*, 68 Fed.Cl. at 591. In the 2007 case currently before the court, the plaintiff requests overtime pay for identical circumstances, using identical language, but for the period extending from July 1, 2005 to June 30, 2007.[3] Other than the different time period, there is nothing in the record to indicate that a material alteration in the facts and circumstances has occurred in the intervening time between when the 2004 case brought by Mr. Corrigan was decided in 2005 and when plaintiff filed the current case in 2007. Plaintiff does not dispute, in any of the pleadings filed with this court, that his claims regarding overtime compensation for commute time raised in the 2007 complaint are identical to those raised in the 2004 complaint, except for chronology. Neither does Mr. Corrigan raise any factual circumstances that would lead the court to believe that a significant change in material facts has occurred.

Additionally, there has been no change in *applicable* statutory, regulatory or binding case precedent since the 2004 filing and 2005 decision in plaintiff's earlier lawsuit. The relevant statutory provisions of the FLSA and the FEPA have not been amended between the time of the plaintiff's 2004 and 2007 lawsuits. *See* 29 U.S.C. §§ 201–216, *et seq.* (FLSA); 5 U.S.C. §§ 5542, 5544, 5546 (FEPA). Moreover, the regulations implementing FEPA likewise have not changed for the period of time during which Mr. Corrigan claims he was entitled to overtime benefits. *See* 5 C.F.R. § 550.111(c) (2008) (regulations mandating that, under FEPA, a federal employee must obtain written authorization and approval from a supervisor in order be eligible for overtime compensation). Although

---

3. As discussed above, plaintiff's complaint also makes a vague request for overtime compensation for the period of July 1, 2004 to June 30,

2005, "if the situation demands," which this court has dismissed as barred by the applicable statute of limitations.

the Code of Federal Regulations provisions implementing the FLSA, particularly those delineating the professional exemption test for overtime compensation, were subsequently revised, the revised regulations did not go into effect until October 17, 2007, after the period of time for which Mr. Corrigan filed the present suit, and are, therefore, inapplicable to his 2007 case.[4] *See* 5 C.F.R. § 551.207, *et seq.* (2008) (FLSA) (describing revised criteria for and new categories of professional exemption under the FLSA, effective October 17, 2007); *see also* 5 C.F.R. § 551.202(d) (2007) (FLSA) (stating that an employee is ineligible for overtime pay under the FLSA if it is determined that the employee meets exemption criteria); 5 C.F.R. § 551.207 (2007) (FLSA) (outlining criteria for the professional exemption, under the FLSA, pre-October 2007).

Furthermore, based on existing precedent, which has been consistent for the time periods at issue in the 2004 and 2007 cases, Mr. Corrigan would not be eligible to receive overtime compensation under the FLSA or FEPA.[5] *See, e.g., Doe v. United States,* 372 F.3d 1347, 1360 n. 6 (Fed.Cir.2004) (holding that the plaintiffs, who were in positions classified as professional, were not covered by the FLSA because they were professionally exempt), *aff'd after remand and subsequent appeal,* 463 F.3d 1314, 1320–22 (Fed.Cir. 2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 1910, 167 L.Ed.2d 565 (2007); *IntraComm, Inc. v. Bajaj,* 492 F.3d 285, 291 (4th Cir.2007) (holding that specific categories of employees, including those employed by the government in a professional capacity, are exempt from FLSA overtime pay requirements); *see also Carlsen v. United States,* 521 F.3d 1371, 1380 (Fed.Cir.2008) (holding that plaintiffs were not entitled to overtime compensation under FEPA because they did not obtain an

" 'express directive to work overtime' " from a supervisor (quoting *Doe v. United States,* 372 F.3d at 1363)). There has not been a significant change in the law applicable to plaintiff's 2004 and 2007 suits on the contested issue of whether Mr. Corrigan can recover overtime pay, and, specifically, whether he can receive overtime pay for commuting time. In sum, for the purposes of consideration by this court of plaintiff's 2007 lawsuit, the standard for identical issues of the issue preclusion test is met.

### (2) Actually Litigated

For an issue to be precluded in a subsequent action, in addition to being identical, it must have been "actually litigated and determined in the original action.... Only upon such matters is the judgment conclusive in another action." *Cromwell v. County of Sac,* 94 U.S. at 353. An issue is "actually litigated" when it is: 1) appropriately raised, by the pleadings or otherwise; 2) submitted for determination; and 3) determined by the court. *See* Restatement (Second) of Judgments § 27 comment d; *Banner v. United States,* 238 F.3d 1348, 1354 (Fed.Cir.2001) (holding that, despite plaintiff's assertions to the contrary, the relevant issues were "actually litigated," because they were raised by the pleadings, submitted for determination, and actually decided by the court).

The issues raised by Mr. Corrigan in the 2004 complaint were actually litigated. In the case initiated by the 2004 complaint, Mr. Corrigan raised the matter of reimbursement for " 'commuting' time for overnight travel away from the duty station" and for " 'commuting' time for travel to and from the work site within the official duty station," under both the FLSA and FEPA. *Corrigan v.*

---

4. The court notes that even if the revised FLSA Code of Federal Regulations provisions were applicable to the 2007 claim brought by Mr. Corrigan, his position at NCUA still is considered professionally exempt, making him ineligible to receive overtime compensation under the "learned professional exemption." *See* 5 C.F.R. § 551.208 (2008).

5. Because each individual instance of overtime requires written authorization, the determination in the 2004 suit that Mr. Corrigan was not eligi-

ble for overtime pay under FEPA was made in regard to that case alone. In the present action, however, the 2007 complaint does not allege that Mr. Corrigan obtained written authorization for overtime for any time during the period July 1, 2005 to June 30, 2007. Therefore, in the motion to dismiss currently before this court, even taking the facts in the light most favorable to the plaintiff, Mr. Corrigan also would not be eligible for overtime compensation under FEPA in the 2007 lawsuit. *See* 5 C.F.R. § 550.111(c).

*United States*, 68 Fed.Cl. at 591. The government "submitted" the issues for determination by the court when it requested that the court grant its motions to dismiss and for summary judgment, including all plaintiff's claims within the parameters of its motions. *Id.* On those claims that were not dismissed because they were time-barred, *id.* at 593, the government argued in its motion for summary judgment that Mr. Corrigan was not entitled to overtime compensation under either the FLSA, because he was professionally exempt, or under the FEPA, because he had not received written authorization as required by law. *Id.* at 593, 596. Both the government and Mr. Corrigan had an opportunity to file and fully brief the issues in the 2004 case. After receipt of the filings from both parties, in granting the government's motion for summary judgment on all claims related to overtime compensation, including those related to "'commuting' time," the 2004 court considered the plaintiff's claims and made specific determinations on the issues raised.[6] *Id.* at 595, 596, 601.

Nonetheless, plaintiff argues in the 2007 action that the issue of overtime compensation regarding commute time was not actually litigated, apparently because Judge Hewitt did not expressly address commute time in her final decision, and because the defendant has not specifically delineated how the issue of commute time was previously litigated.[7] Plaintiff's assertions are not persuasive. The court in the original 2004 action analyzed and decided the issues of commute time under the FLSA and FEPA, and concluded that none of Mr. Corrigan's overtime claims, under any circumstances, were valid as a matter of law. Although the court in the 2004 opinion did not state specifically that Mr. Corrigan should not to recover overtime pay for commute time, the court held that Mr.

Corrigan was not entitled to any overtime pay on any claims under the FLSA and FEPA, thereby covering the issues and words raised in Mr. Corrigan's complaint, which included those specific claims related to commute time. Judge Hewitt left no remaining doubt that each of plaintiff's claims was dismissed after briefing by both parties. *Id.* Thus, the relevant matters were actually litigated in the 2004 action.

### (3) Necessary to Judgment

The third factor of the issue preclusion test is that the issue in question must have been necessary to the judgment in the original proceeding. *Jet, Inc. v. Sewage Aeration Systems*, 223 F.3d at 1366. "[T]he purpose of the ['necessary'] requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." *Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d at 1571. Relitigation of an issue of fact or law in a suit based on a different cause of action may be precluded if the court decides that the issue was necessary to the resulting judgment in the first action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citing *Montana v. United States*, 440 U.S. at 153, 99 S.Ct. 970).

Mr. Corrigan's eligibility for any form of overtime compensation, including "commute time," is at the heart of both the 2004 and 2007 actions. When deciding that Mr. Corrigan was professionally exempt from overtime pay under the FLSA, and that he had not received written authorization for overtime under FEPA, the court in the 2004 action determined that Mr. Corrigan was ineligible for reimbursement on any and all overtime claims, including those specifically related to

---

**6.** After review of the issues presented, this court agrees with the trial court's assessment in the 2004 action that, as a matter of law, based on the applicable statutes and regulations, Mr. Corrigan was not entitled to overtime compensation, for the same reasons that the CU–11 credit union examiner position is professionally exempt under the FLSA, and that Mr. Corrigan had not received written approval from his supervisor, authorizing the overtime, as required by Office of Personnel Management regulations for FEPA.

**7.** In plaintiff's Response to Motion to Dismiss, Mr. Corrigan states: "That is, the defendant must specifically identify what it is about 'commute time' that justifies this motion. It is like some spouse being challenged by the other spouse 'YOU KNOW WHY I'M UPSET.' No spouse is expected to step into that hole. What if you (as the spouse) choose the wrong reason? You are just asking for more grief. Defendant's motion is just like that. There is no substance to it."

"commute time." As stated by the defendant, "[t]he Court could not have ruled without addressing these issues." Thus, adjudication of plaintiff's eligibility to overtime compensation under FLSA and FEPA was a necessary part of the court's judgment in the 2004 action.

#### (4) Full and Fair Opportunity to Litigate

The last requirement of an issue preclusion analysis is that "the party defending against preclusion had a full and fair opportunity to litigate the issues" in the original action. *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d at 1366; *see also Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (holding that the person against whom issue preclusion is asserted should be allowed to demonstrate "that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time'" (quoting *Eisel v. Columbia Packing Co.*, 181 F.Supp. 298, 301 (D.Mass.1960))). When determining whether a party was given a full and fair opportunity to litigate the relevant issues, factors to be considered include: "(1) whether there were significant procedural limitations in the prior proceeding, (2) whether the party had an incentive to litigate fully the issue, and (3) whether effective litigation was limited by the nature or relationship of the parties." *Banner v. United States*, 238 F.3d at 1354; *see also Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1340 (Fed.Cir.) (holding that the "full and fair opportunity to litigate" requirement was met because the plaintiff was fully represented by counsel, had a monetary incentive to litigate, and effective litigation was not hindered in any way), *reh'g denied, en banc suggestion declined* (Fed.Cir.), *cert. denied*, 540 U.S. 1046, 124 S.Ct. 805, 157

L.Ed.2d 693 (2003). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. at 153–54, 99 S.Ct. 970.

Mr. Corrigan received a full and fair opportunity to litigate the issue of commute time in the earlier 2004 action. In this regard, the plaintiff asserts that he was not given a fair opportunity to litigate because Judge Hewitt, in her initial 2004 decision, did not specifically "reference" the *Thurman* or *Yates* opinions, decided by the General Services Board of Contract Appeals (GSBCA), although plaintiff admits that Judge Hewitt did address the two cases in her reconsideration opinion.[8] In his response to the government's motion to dismiss before this court, the plaintiff states that *Thurman* and *Yates* were "the main support for denying summary judgment on my travel claims," and alleges that "if the court was unbiased, it would have addressed *Yates* and *Thurman* in the court's first decision." Those two cases, however, were raised in support of Mr. Corrigan's travel expense reimbursement claims, not his overtime compensation claims, and the travel expense claims are not at issue in the 2007 case currently before this court. In fact, *Thurman* and *Yates* do not address overtime claims brought under the FLSA or the FEPA at all; they only discuss travel expense reimbursement claims arising under the FTR. Therefore, not only did Judge Hewitt actually address the *Thurman* and *Yates* opinions, but because *Thurman* and *Yates* apply to travel expense claims, and not to the claims at issue in the 2007 case, the

---

8. *See In re Thurman*, GSBCA No. 15562–TRAV, 2001–2 B.C.A. ¶ 31,516, 2001 WL 748223 (June 27, 2001) (holding that, when an employee chooses to travel in his or her own vehicle, defendant was required to reimburse plaintiff for certain travel expense costs under the FTR); *In re Yates*, GSBCA No. 15109–TRAV, 2000–1 B.C.A. (CCH) ¶ 30,785 (Jan. 28, 2000) (denying defendant's request for reconsideration of an earlier GSBCA decision holding that, under the FTR, the National Aeronautics and Space Administration was required to reimburse plaintiff for

the constructive cost of travel expenses incurred during a business trip). This court notes that, in her opinion on plaintiff's motion for reconsideration, Judge Hewitt properly explained that even if the court applied the analysis articulated by the GSBCA to plaintiff's travel expense claims, he still would not be entitled to reimbursement of his expenses. Moreover, as pointed out by Judge Hewitt, "Although the opinions of the GSBCA are persuasive authority, they do not bind this court." *Corrigan v. United States*, 70 Fed.Cl. at 673 (citations omitted).

absence or presence of a discussion of those cases by Judge Hewitt is not relevant to the issue preclusion analysis of the 2007 case before this court.

The record also indicates that there were no procedural limitations imposed by the court on Mr. Corrigan in the 2004 action. Mr. Corrigan had a financial incentive to fully litigate the issues raised in the 2004 suit once he was before the court. There is no indication in the record that effective litigation was hindered by either the nature or the relationship of the parties. Finally, plaintiff's decision to proceed *pro se* in the 2004 and the current lawsuits is one of his own choosing.

The record of the 2004 case definitively demonstrates that plaintiff was allowed to present and litigate his claims to the fullest extent possible. The docket sheet for the 2004 action indicates that the FLSA and FEPA issues, including those before this court in the 2007 case before this court, were fully briefed by both parties. In the 2004 case, Mr. Corrigan filed a complaint and was allowed to file an amended complaint. In response, the government filed an answer to the amended complaint. Subsequently, the defendant filed a motion to dismiss, in part, and a motion for summary judgment, in part. These motions were fully briefed by both parties. As part of the motion practice, defendant also filed Defendant's Proposed Findings of Uncontroverted Fact, in response to which plaintiff filed Plaintiff's Response to Proposed Findings of Uncontroverted Fact. The court in the 2004 suit used and cited these filings throughout its opinions to make its factual findings in the case. *See Corrigan v. United States,* 68 Fed.Cl. 589; *Corrigan v. United States,* 70 Fed.Cl. 665. Plaintiff also had and took the opportunity to appeal his case to the United States Court of Appeals for the Federal Circuit, which affirmed the lower court's decision, *Corrigan v. United States,* 223 Fed.Appx. 968, after which the plaintiff tried to appeal to the United States Supreme Court, which denied certiorari, *Corrigan v. United States,* —— U.S. ——, 128 S.Ct. 338, 169 L.Ed.2d 155.

Ultimately, relitigation of the overtime issues presented by the plaintiff, first to Judge Hewitt in the 2004 cause of action, and again to this court in the 2007 lawsuit, albeit for different periods of time, would serve no purpose. The legal and factual issues of whether the plaintiff is eligible to receive overtime compensation under either the FLSA or FEPA have been previously litigated between the same parties, and have been exhaustively addressed. Mr. Corrigan received a full and fair opportunity to litigate his overtime compensation claims in the first action. To allow plaintiff to relitigate the same issues would not be in the interests of judicial economy and would be inconsistent with existing case precedent.

## CONCLUSION

For the foregoing reasons, pursuant to RCFC 12(b)(6), defendant's motion to dismiss is **GRANTED,** and the plaintiff's complaint is dismissed, with prejudice. The clerk's office shall dismiss plaintiff's complaint and enter judgment consistent with this opinion. Costs to defendant.

**IT IS SO ORDERED.**