# United States Court of Appeals for the Federal Circuit

04-3400

CHARLES G. MORGAN,

Petitioner,

v.

DEPARTMENT OF ENERGY,

Respondent.

Richard Segerblom, of Las Vegas, Nevada, argued for petitioner.

J. Reid Prouty, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director. Of counsel was Mark A. Melnick, Assistant Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3400

CHARLES G. MORGAN,

Petitioner,

v.

DEPARTMENT OF ENERGY,

Respondent.

_____

DECIDED:  September 27, 2005

_____

Before NEWMAN, CLEVENGER and GAJARSA, <u>Circuit Judges</u>.

CLEVENGER, <u>Circuit Judge</u>.

Charles G. Morgan ("Mr. Morgan") seeks review of the final decision of the Merit Systems Protection Board ("Board") dismissing his Whistleblower Protection Act ("WPA") case for lack of jurisdiction, finding that his disclosures, although deemed protected in a previous adjudication, do not qualify as protected under the current legal standard.  <u>See</u> <u>Morgan v. Dep't of Energy</u>, No. SF1221020082-W-2 (M.S.P.B. June 22, 2003) (reopened for a determination of back pay in <u>Morgan v. Dep't of Energy</u>, 81 M.S.P.R. 48 (1999)).  However, because collateral estoppel bars relitigation of whether the disclosures qualify for protected status, we reverse and remand for further proceedings.

I

Mr. Morgan is, in the words of his counsel, a "certified whistleblower." He gained that status by prevailing against his employer, the Department of Energy ("agency"), in a case finally decided by the Board in 1997. In that case, Mr. Morgan asserted three different disclosures critical of the agency, made in 1990, 1991, and 1992, and alleged that in reprisal for those disclosures, the agency had taken adverse personnel action against him. After a hearing, the Board determined that each of the three disclosures qualified as protected disclosures under the WPA. The Board also determined that the agency's adverse action against Mr. Morgan was in reprisal for his having made the protected disclosures. Since the agency's adverse action was otherwise unjustified, the Board ruled in favor of Mr. Morgan, awarding him a promotion and back pay for the violation of his WPA rights. See Morgan v. Dep't of Energy, 81 M.S.P.R. 48 (1999).

While Mr. Morgan's case was pending, he allegedly was subjected to eleven further adverse personnel actions: a performance evaluation in 1994, a reassignment in 1995, non-selection for eight different vacancies between 1994 and 1996, and a rejection of an application for a ninth vacancy in 1996. Mr. Morgan initiated a second WPA case, alleging that these eleven personnel actions were taken against him in further reprisal for the same three disclosures at issue in the first case. In a nutshell, Morgan asserted that the agency was continuing to pick on him, wrongly, for having made the earlier disclosures.

In order for the Board to have jurisdiction over a WPA claim, an individual must make non-frivolous allegations that he has made a protected disclosure and that his disclosure was a contributing factor in the agency's decision to take an adverse action against him. Yunus v. Dep't of Veterans Affairs, 242 F.3d 1367, 1371 (Fed. Cir. 2001). To prevail on the merits, the individual must prove these elements by a preponderance of the evidence. If the agency cannot show by clear and convincing evidence that it would have taken the same adverse action or actions against the employee, regardless of the disclosures made, the employee prevails and is entitled to appropriate relief. Ellison v. Merit Sys. Prot. Bd., 7 F.3d 1031, 1034 (Fed. Cir. 1993).

The question in this case concerns the first element of Mr. Morgan's current case regarding the eleven personnel actions. Has Mr. Morgan established that he indeed made protected disclosures? The administrative judge assigned to Mr. Morgan's current case initially decided that Mr. Morgan had indeed proven that his three disclosures are protected, since that much had been finally adjudicated against the agency in the first case; under the doctrine of collateral estoppel, the agency was precluded from challenging the protected nature of those three disclosures. Later, however, the administrative judge revisited the question of whether collateral estoppel precluded relitigation of whether the three disclosures qualified for protection under the WPA.

The issue was revisited because between the adjudication of the first and second cases, the law concerning protected disclosures had changed.[1]  The agency therefore wished to apply the changed law to the three disclosures to test whether they qualified for protected status.

The administrative judge recognized that there is a general exception to application of collateral estoppel when there has been an intervening change in law applicable to the issue in suit.  Relying on our application of that exception in Bingaman v. Department of the Treasury, 127 F.3d 1431 (Fed. Cir. 1997), the administrative judge held that Mr. Morgan could not rely on collateral estoppel to bar relitigation of whether the three disclosures enjoy protected status under the WPA. After assessing the three disclosures under the current law, the administrative judge concluded that the disclosures do not qualify for protected status.  That finding was the death knell of Mr. Morgan's second WPA suit, and his complaint was thus dismissed. When the full Board declined review of the administrative judge's decision, the dismissal became final and Mr. Morgan timely sought review in this court.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

III

This court reviews a final Board decision to determine if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or

---

[1]     Because Mr. Morgan agrees that the law indeed has changed since the first case, and that under current law his disclosures do not qualify for protected status under the WPA, we may simply refer to the cases that changed the law.  See Huffman v. Office of Pers. Mgmt., 263 F.3d 1341 (Fed. Cir. 2001); Willis v. Dep't of Agric., 141 F.3d 1139 (Fed. Cir. 1998).

(3) unsupported by substantial evidence. 35 U.S.C. § 7703(c) (2000); Link v. Dep't of the Treasury, 51 F.3d 1577, 1581 (Fed. Cir. 1995).

This appeal raises a question of law, which is a matter we review without deference to the Board. Diefenderfer v. Merit Sys. Prot. Bd., 194 F.3d 1275, 1277 (Fed. Cir. 1999); Bingaman, 127 F.3d at 1437-38. The question is simply whether collateral estoppel precludes relitigation of whether the three disclosures satisfy the test for protected disclosures. The issue is outcome determinative in this case because Mr. Morgan concedes that under the current law, the three disclosures would not qualify for protected status. Thus, if collateral estoppel does not apply, the Board is correct and Mr. Morgan's case fails. However, if collateral estoppel does apply, then Mr. Morgan has satisfied the first element of a WPA suit, and the case would be remanded for further proceedings to determine if the eleven new personnel actions were taken in reprisal for the old disclosures, and if so, whether the agency prevails on proof that it would have taken the actions notwithstanding the protected disclosures.

IV

Generally, "[u]nder collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979). This is true, "even though the determination was reached upon an erroneous view or by an erroneous application of the law." United States v. Moser, 266 U.S. 236, 242 n.4 (1924).

Collateral estoppel serves two purposes. It protects litigants from the burden of relitigating an identical issue and promotes judicial economy by preventing needless litigation. Arkla, Inc. v. United States, 37 F.3d 621, 624 (Fed. Cir. 1994)

Like other tribunals, the Board may apply collateral estoppel where: (i) the issue previously adjudicated is identical with that now presented, (ii) that issue was actually litigated in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action. Thomas v. Gen. Servs. Admin., 794 F.2d 661, 664 (Fed. Cir. 1986) (internal citations omitted). However, there is an exception to the applicability of collateral estoppel when there has been an intervening change in the law. See Bingaman, 127 F.3d at 1438; Restatement (Second) of Judgments 28 (1982) ("Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in the subsequent action between the parties is not precluded in the following circumstances: . . . [(2)(b)] a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . . .").

To frame the issue before us, assume that Mr. Morgan had not relied in his second case on the previously adjudicated disclosures, but instead had repeated the same criticisms of the agency a second time, and alleged that the eleven personnel actions were taken in reprisal his repetition of the criticisms. In that instance, a new determination would be necessary to decide whether the repeated disclosures qualify for protected status. Due to the intervening change in the law governing what

constitutes a protected disclosure, collateral estoppel would not prevent relitigation of whether the disclosures are indeed protected.

This case is different, however, because Mr. Morgan has not made fresh disclosures, either by repeating his old disclosures or by making different ones. Rather, he is arguing that new adverse personnel actions have been taken in retaliation for the same set of 1990-1992 disclosures that the Board already determined were protected. This case thus differs from Bingaman, the primary support for the agency's argument and the Board's decision.

In Bingaman, the question was whether certain employees qualified for retirement benefits as Law Enforcement Officers ("LEO"). Mr. Bingaman sought LEO credit for the period from February 1989 to July 1993, but was denied by his employer on the ground that he had not performed the requisite law enforcement duties. Mr. Bingaman appealed to the Board, which held that he qualified for LEO retirement benefits for the 1989-1993 time period.

When Mr. Bingaman sought LEO credit for the 1993-1994 period, his employer balked again, and Mr. Bingaman returned to the Board. Since Mr. Bingaman's duties in the 1993-1994 period were essentially the same as in the earlier period, he argued that collateral estoppel prevented the government from challenging his entitlement to LEO credit for the new services performed. However, because case law had narrowed the interpretation of LEO under the statute between the first case and the second, the Board invoked the change of law exception to collateral estoppel, thereby permitting adjudication of whether the duties performed by Mr. Bingaman in 1993-1994 satisfied the test for LEO credit status.

The Board applied the current legal test to the actual duties performed by Mr. Bingaman in 1993-1994, concluding that under the then-applicable law, he failed to qualify for LEO credit status. On petition for review in this court, we affirmed the Board, holding that it correctly invoked the exception to collateral estoppel for changes in law and correctly determined that under the changed law, Bingaman's case failed.

Unlike Mr. Bingaman, Mr. Morgan engaged in no new conduct with respect to his claim for relief. Whereas Mr. Bingaman had to show that he performed particular duties in the 1993-1994 period, after the original adjudication, Mr. Morgan did not rely on fresh disclosures of agency wrong-doing. He simply pointed to his 1990-1992 disclosures and stated that the agency continued to punish him for his previous statements.

In our decision in <u>Bingaman</u>, we correctly relied on <u>Commissioner v. Sunnen</u>, 333 U.S. 591, 599 (1948), wherein the Supreme Court refused to give collateral estoppel effect to a taxpayer who, in a subsequent tax year, sought the benefit of an earlier decision. Like <u>Bingaman</u>, <u>Sunnen</u> involved a party seeking to insulate new acts (<u>i.e.</u>, the payment of taxes) that occurred after a previous adjudication from analysis under a changed law. Again, as noted above, Mr. Morgan is not alleging new disclosures as the predicate for his WPA case.

Thus, <u>Bingaman</u> establishes that where a party seeks to establish the legal consequences of new facts that are identical to facts previously adjudicated, collateral estoppel will not bar relitigation of the legal consequences of those facts if an intervening change in law has altered the applicable legal test. Extending the <u>Bingaman</u> exception to collateral estoppel to the instant case, where a party is seeking relitigation of the legal consequence of the very same set of facts as were previously adjudicated,

would effectively gut the doctrine of collateral estoppel. That is, because the "change of law" requirement of <u>Bingaman</u> is so broad, encompassing later judicial decisions that contradict or clarify earlier interpretations of a statute, barring collateral estoppel when the very same acts are at issue would mean that collateral estoppel is inapplicable whenever a later decision calls into question the propriety of the legal analysis of an earlier decision. Such a holding would be in contravention of the fundamental concept of collateral estoppel, that "a fact, question or right distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law." <u>Moser</u>, 266 U.S. at 242.

IV

We conclude that the <u>Bingaman</u>/<u>Sunnen</u> justification for barring collateral estoppel is not present in this case. Had Mr. Morgan asserted fresh disclosures of agency misconduct in his second case, whether by repeating his former disclosures or by making different ones, collateral estoppel would not have benefited him, due to the intervening change in law and the consequent exception to the application of collateral estoppel. However, in the circumstances of this case, collateral estoppel bars relitigation of whether the 1990-1992 disclosures qualify for protected status.

<u>REVERSED AND REMANDED</u>
