NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KEVIN AUBART,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2021-2190

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-20-0520-W-1.

---

Decided: January 18, 2022

---

KEVIN AUBART, Honolulu, HI, pro se.

JEFFREY GAUGER, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent. Also represented by TRISTAN L. LEAVITT, KATHERINE MICHELLE SMITH.

---

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges*.

PER CURIAM.

Kevin Aubart filed an Individual Right of Action (IRA) appeal with the Merit Systems Protection Board, alleging that his employer, the U.S. Department of the Army, engaged in prohibited retaliation for his whistleblowing. Specifically, he asserted that the Army created a hostile work environment and proposed to remove him in retaliation for disclosing that three Army employees made materially false statements in various official proceedings. The Board dismissed the challenge, concluding that Mr. Aubart failed to nonfrivolously allege a disclosure protected under the Whistleblower Protection Act (WPA). Supplemental Appendix (SAppx) 1–20; *see also Aubart v. Dep't of the Army*, No. SF-1221-20-0520-W-1, 2020 WL 6269161 (M.S.P.B. Oct. 23, 2020). Mr. Aubart appeals. We affirm.

I

When the events in question began, Mr. Aubart worked as a Supervisory Information Technology Specialist for the Army's Regional Cyber Center-Pacific (RCC-P) group, which was located at Fort Shafter, Hawaii. On February 10, 2017, Lieutenant Colonel Christopher Siegrist, the director of the RCC-P group, sent Mr. Aubart and his co-workers a memorandum under the subject heading "Temporary Duty Relocation" (Siegrist Memorandum), which stated in pertinent part:

> 1. This memorandum is to inform you of a temporary change in your duty station from the Regional Cyber Center Pacific (RCC-P), Fort Shafter, Hawaii to BLDG 1500 Schofield Barracks effective February 18, 2017.
>
> 2. The RCC-P will undergo major renovations within the office and building. As a result, you will be temporarily reassigned to BLDG 1500 Schofield Barracks, where you will continue to perform the same essential job functions that you now perform.

> We anticipate the completion in 14 weeks and will provide you sufficient notice in returning to Fort Shafter.
>
> 3. If you have questions or concerns about this temporary relocation, please address them to . . . .

SAppx 43. On February 18, 2017, the RCC-P group's work began at Schofield, a separate Army base 19.1 miles from Fort Shafter. But despite Lt. Col. Siegrist's original forecast of fourteen weeks for the renovation, the RCC-P group worked at Schofield for more than thirty-eight weeks, until November 14, 2017. During that time, the RCC-P employees' job duties at Schofield were essentially the same as what they had been at Fort Shafter.

In response to the transfer to Schofield, Mr. Aubart and other RCC-P employees requested per diem mileage reimbursement for their additional commuting expenses, but Lt. Col. Siegrist denied those requests. Mr. Aubart then filed an appeal with the United States Civilian Board of Contract Appeals (CBCA). An Army pleading in that proceeding (signed by Army attorney Rachael Orejana) contains two statements referring to Schofield as Mr. Aubart's "official duty station." SAppx 94 ("On or about February 10, 2017, LTC Christopher Siegrist . . . notified RCC-P employees, including [Mr. Aubart], that their official duty station would be changed for a period of approximately fourteen weeks."); SAppx 95 ("It is well-settled that an employee who is engaged in commuting between his or her residence and official duty station is performing personal business, not official business, for the government, and the employing agency is not required to pay the transportation costs that the employee incurs while commuting."). Similar language appears in an attached sworn declaration from Lt. Col. Siegrist. SAppx 98–99 ("On or about February 10, 2017, I notified RCC-P employees, via written memorandum, that their official duty station would be changed for a period of approximately fourteen weeks and that their

new duty station would be located at Building 1500 on Schofield Barracks, Oahu, Hawaii."). The CBCA denied Mr. Aubart's claim on September 11, 2017, and Mr. Aubart withdrew the appeal of the denial he filed in this court.

On December 28, 2017, Mr. Aubart initiated another proceeding: He filed a civil complaint against the Secretary of the Army in the District Court for the District of Hawaii, asserting that he was entitled to compensation for his travel expenses because his relocation to Schofield qualified as Temporary Duty (TDY)—as opposed to a Permanent Change of Station (PCS) or Temporary Change of Station (TCS)—under the Department of Defense's Joint Travel Regulations. *See Aubart v. McCarthy*, No 1:17-cv-00611, 2019 WL 3892408, at *1, *3 (D. Haw. Aug. 19, 2019). The Secretary moved for summary judgment, arguing in relevant part that Mr. Aubart would not be eligible for compensation for his travel expenses, because his permanent duty station (or official duty station) had changed during the time he worked at Schofield (whether classified either as a permanent change of station or as a temporary change of station). *Id.* at *3; *see* SAppx 115–27 (memorandum in support of motion for summary judgment). As part of the summary judgment briefing, the Secretary provided a sworn declaration from RCC-P Deputy Director Scott Chilson stating that "[o]n or about February 10, 2017, Lieutenant Colonel Christopher M. Siegrist provided notice to employees of RCC-P who worked at Building 520 at Fort Shafter that their duty station was being moved to Schofield Barracks because the office at Fort Shafter was no longer available." SAppx 55–57 (dated July 17, 2019).

The district court granted the Secretary's motion on August 19, 2019. *Aubart*, 2019 WL 3892408, at *6. The court agreed with Mr. Aubart that the Siegrist Memorandum "could have been drafted with greater clarity," but it nevertheless concluded that the "undisputed record supports the conclusion that [Mr. Aubart's] permanent duty station was changed from Fort Shafter to Schofield

Barracks, for the period of February 18, 2017 through November 14, 2017" and that, as a result, he "is not entitled to reimbursement for the transportation costs incurred." *Id.* at *5–6. Mr. Aubart appealed to the Ninth Circuit, which affirmed in December 2020. *Aubart v. McCarthy*, 830 F. App'x 959, 960 (9th Cir. 2020).

After the district court's ruling but during the Ninth Circuit appeal, on November 7, 2019, Mr. Aubart wrote to Lt. Col. Heath Giesecke, the new RCC-P director, stating: "I am the Whistleblower, but most RCCP civilians know Ms[.] Orejana lied about the permanent change of station to keep us from getting reimbursed." SAppx 58. Similarly, on April 7, 2020, Mr. Aubart wrote to Brigadier General Jan Norris, stating:

> In 2017, Army lawyer Rachael Orejana and former RCCP Director LTC Siegrist made false statements in court documents claiming LTC Siegrist notified RCCP employees of a PCS via a "Siegrist Memorandum" despite the fact that the Siegrist Memorandum clearly refers to a TDY, not a PCS. The purpose of these statements was to justify denial of otherwise lawful TDY claims. . . . In 2019, Ms[.] Orejana admitted in [a] sworn statement that the Siegrist memorandum never referred to a PCS. Despite Ms[.] Orejana's admission, Army lawyers continue to assert in court documents that the Siegrist Memorandum notified RCCP employees of a PCS . . .[1] Army lawyers solicited a false sworn statement from RCCP Deputy Director, Scott

---

[1]    Mr. Aubart is apparently referring to a February 11, 2019 submission Ms. Orejana made to the Merit Systems Protection Board in a separate case involving him, in which she made the verifiably true statement that she "*never* referred to a PCS in the [CBCA] pleadings." SAppx 101–09; *see* SAppx 94–97 (CBCA pleading in question).

> Chilson, which claimed the Siegrist Memorandum notified RCCP employees "that their duty station was being moved to Schofield Barracks because the office at Fort Shafter was no longer available." The obvious purpose of this statement was to further the Army's false narrative of a PCS. The statement is patently false, not only because it falsely claims a PCS, but also because the Fort Shafter office was always intended to be, and obviously continues to be, available.

SAppx 59. Those are the disclosures Mr. Aubart now asserts constituted protected whistleblowing.

On May 1, 2020, RCC-P Deputy Director Chilson sent Mr. Aubart a Notice of Proposed Removal for conduct unbecoming a supervisor. SAppx 71–75. On May 26, 2020, Mr. Aubart filed a whistleblower retaliation complaint with the Office of Special Counsel (OSC), pursuant to 5 U.S.C. § 1214(a)(1)(A), seeking corrective action for alleged "prohibited personnel practice[s]" by the Army, namely, retaliation for whistleblowing in violation of the WPA, codified as relevant at 5 U.S.C. § 2302(b)(8), (9). The OSC complaint is not in the record, but the Board decision now before us indicates that, in the complaint, Mr. Aubart claimed that his employers had retaliated by creating a hostile work environment and suggesting his removal in response to his emails to Lt. Col. Giesecke and Brig. Gen. Norris—which he alleged constituted reports that Ms. Orejana, Lt. Col. Siegrist, and Deputy Director Chilson violated 18 U.S.C. § 1001 (prohibiting materially false statements in connection with official proceedings) during the CBCA and district court proceedings. SAppx 7–13. OSC closed its investigation without action. Mr. Aubart then filed an IRA appeal with the Board. SAppx 35–76; *see also* SAppx 90–149 (responses to order to provide evidence).

The Army moved to dismiss the appeal for lack of jurisdiction, which an administrative judge for the Board granted in an initial decision on October 23, 2020. First, the administrative judge determined that Mr. Aubart had exhausted his remedies before OSC. SAppx 10. Next, the administrative judge surveyed the relevant statements and concluded that Mr. Aubart failed to nonfrivolously allege that he had a reasonable belief that Ms. Orejana and Lt. Col. Siegrist violated § 1001 in their CBCA submissions, which asserted that the Siegrist Memorandum notified RCC-P employees that their "official duty station" had been changed. SAppx 13–18. Although Mr. Aubart argued that the Siegrist Memorandum "did not constitute a change in his official duty station," the administrative judge rejected the argument, stating that it "boil[ed] down to how the relocation should be legally characterized as opposed to any evidence of a factual misrepresentation by the agency." SAppx 17. Similarly, the administrative judge concluded that Mr. Aubart failed to nonfrivolously allege that he had a reasonable belief that Deputy Directory Chilson violated § 1001 by stating in his July 2019 declaration in district court that Lt. Col. Siegrist informed the RCC-P employees that their "duty station was being moved . . . because the office at Fort Shafter was no longer available." SAppx 18–20. The administrative judge noted Mr. Aubart's contention that the Fort Shafter office was still available for storing equipment, furniture, and other items during the renovation, but determined that "[w]hile Chilson could have added that the reason the Fort Shafter office space was not available was due to it being renovated[,] I do not find [that] this lack of detail makes his statement false." SAppx 19. Accordingly, the administrative judge dismissed the appeal for lack of jurisdiction. SAppx 20.

Mr. Aubart initially petitioned for review by the Board, but he withdrew that request, and, as a result, the initial decision become the final decision of the Board on August 12, 2021. SAppx 1. Mr. Aubart timely appealed to this

court.  5 U.S.C. § 7703(b)(1)(B); *Jones v. Dep't of Health & Human Servs.*, 834 F.3d 1361, 1364–66 (Fed. Cir. 2016) (permitting notice of appeal to be filed before initial decision becomes final decision of the Board).  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

II

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed, or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).  "Whether the board had jurisdiction to adjudicate a case is a question of law, which we review de novo." *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995).

The Board has jurisdiction over an IRA appeal under the WPA if the appellant, having exhausted the possibility of OSC administrative remedies, makes to the Board "nonfrivolous allegations" that (1) the appellant engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) (or § 2302(b)(9)(A)(i), (B), (C), or (D), which are not at issue here) and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take, or the agency's threats to take or fail to take, a "personnel action" against the appellant.  5 U.S.C. § 1221(a); *id.* § 2302(b)(8); *see Hessami v. Merit Sys. Prot. Bd.*, 979 F.3d 1362, 1367 (Fed. Cir. 2021); *Cahill v. Merit Sys. Prot. Bd.*, 821 F.3d 1370, 1373 (Fed. Cir. 2016); *Kahn v. Dep't of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008); *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371–72 (Fed. Cir. 2001).  A protected disclosure is one that the employee "reasonably believes evidences (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety."  5 U.S.C § 2302(b)(8).  And an employee's belief is reasonable if "a

disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the government" come within one of the protected categories. *Lachance v. White*, 174 F.3d 1378, 1380–81 (Fed. Cir. 1999); *cf. Baldwin v. Dep't of Veterans Affairs*, 113 M.S.P.R. 469, 477–78 (M.S.P.B. 2010) ("Because the inquiry is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced a violation of law, we consider concepts of criminal law from a layman's perspective as well as in a legal sense." (citation omitted)).

Mr. Aubart argues on appeal that the Board's decision "failed to properly apply the non-frivolous standard at the jurisdictional stage." Informal Reply Br. 12–15; *see also* Informal Opening Br. 2–3.[2] We disagree. A nonfrivolous

---

[2]    Various new arguments presented in Mr. Aubart's reply in this court are forfeited. Informal Reply Br. 1–12 (primarily contending that transfer was not in accordance 5 U.S.C. § 5737). Mr. Aubart did not present those arguments in his opening brief to this court, Informal Opening Br. 2–3; nor are such arguments reflected in Mr. Aubart's submissions to the Board now filed with us, SAppx 35–42; SAppx 90–93. Moreover, it appears (but given our finding of forfeiture we need not decide) that Mr. Aubart's § 5737-based arguments would require us to redecide factual and legal issues—concerning the character of his change of duty station to Schofield and his corresponding entitlement to compensation—that the district court already decided adversely to Mr. Aubart in the Hawaii litigation, issues he is precluded from relitigating here. *See Morgan v. Dep't of Energy*, 424 F.3d 1271, 1274–76 (Fed. Cir. 2005); *Kroeger v. U.S. Postal Serv.*, 865 F.2d 235, 239 (Fed Cir. 1988);

allegation "is an assertion that, if proven, could establish the matter at issue" under the WPA requirements; it must be plausible on its face and more than conclusory. 5 C.F.R. § 1201.4(s); *see Hessami*, 979 F.3d at 1367–69; *Yunus*, 242 F.3d at 1371–72. As a result, the key question here is whether Mr. Aubart *plausibly* alleged (after the Hawaii district court ruling) that a disinterested observer, privy to all essential facts known and readily ascertainable to Mr. Aubart, would reasonably conclude that Ms. Orejana, Lt. Col. Siegrist, and Deputy Director Chilson "knowingly and willfully" made "materially false, fictitious, or fraudulent statement[s] or representation[s]" in matters "within the jurisdiction of the executive, legislative, or judicial branch of Government of the United States." 18 U.S.C. § 1001(a); *see, e.g.*, *United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015).[3] We agree with the Board that Mr. Aubart did not (and could not) plausibly allege that any disinterested observer, even a layperson, would reasonably believe that the named individuals violated § 1001.

First, no such reasonable belief is possible regarding Ms. Orejana and Lt. Col. Siegrist's statements in their CBCA submissions that the Siegrist Memorandum notified RCC-P employees that their "official duty station" had been changed—even though the Siegrist Memorandum did not itself use the term "official duty station" and did repeatedly

---

*Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569–73 & n.4 (Fed. Cir. 1983).

[3] We, like the Board, focus on 18 U.S.C. § 1001 because that is the statute Mr. Aubart himself identified in his IRA appeal. SAppx 35. And we do not find that Mr. Aubart's statements and the circumstances surrounding them clearly implicate another identifiable violation of law, rule, or regulation. *Langer v. Dep't of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001); *see also Griesbach v. Dep't of Veterans Affairs*, 705 F. App'x 962, 965 (Fed. Cir. 2017).

use the word "temporary." *Compare* SAppx 43 (Siegrist Memorandum), *with* SAppx 94–99 (CBCA submissions). The district court in Mr. Aubart's Hawaii litigation explained why the Siegrist Memorandum, properly read, treated Mr. Aubart's permanent duty station as changed, given the technical definitions set forth in the applicable law and regulations. *Aubart*, 2019 WL 3892408, at *5–6. As a result, no disinterested observer, aware of the district court litigation as Mr. Aubart certainly was (when he made the asserted whistleblowing disclosures), could reasonably believe that Ms. Orejana and Lt. Col. Siegrist's statements making essentially the same legal arguments that the district court ratified had knowingly and willfully made materially false statements in violation of § 1001(a). *See id.* (using "official duty station" and "permanent duty station" interchangeably); Informal Reply Br. 3 (Mr. Aubart recognizing that "permanent duty station" is synonymous with "official station"); SAppx 91 (same).[4]

Second, no disinterested observer could reasonably believe that Deputy Directory Chilson violated § 1001 by stating in his July 2019 declaration in district court that Lt. Col. Siegrist informed the RCC-P employees that their "duty station was being moved . . . because the office at Fort Shafter was no longer available." SAppx 55–56. For the same reasons described above, there is no possible

---

[4]    The same conclusion applies to Mr. Aubart's comparable assertion about the U.S. Attorney's office's arguments to the Hawaii district court about the legal character of the change. *See* SAppx 18 n.4. Given our conclusions, we need not reach the question of the applicability here of 18 U.S.C. § 1001(b), which provides: "Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding."

plausible allegation that anyone could view the first half of Deputy Directory Chilson's statement (*i.e.*, that the duty station was moved) as materially false. Further, there is no possible plausible allegation that anyone could view the second half of the statement (*i.e.*, that Fort Shafter was no longer available) as materially false simply because Deputy Directory Chilson did not additionally spell out the precise way (not available for regular work, but available for storage, etc.) or reason (for renovation) that Fort Shafter was no longer available.

As Mr. Aubart has made no other allegations of violations of law, rule, or regulation, or of gross mismanagement, gross waste of funds, abuse of authority, or substantial and specific danger to public health or safety, we agree that the Board lacked jurisdiction under 5 U.S.C. § 1221 and was obligated to dismiss Mr. Aubart's petition.

## III

For the foregoing reasons, we affirm the Board's dismissal of Mr. Aubart's action for lack of jurisdiction.

The parties shall bear their own costs.

**AFFIRMED**